COLONIAL TRADING CORP., Plaintiff,

v.

DEPARTMENT OF the
NAVY, Defendant.

Civ. A. No. 87–1406.

United States District Court,
District of Columbia.

April 5, 1990.

Paul J. Seidman, Washington, D.C., for plaintiff.

Mark E. Nagel, Asst. U.S. Atty., Washington, D.C., for defendant.

MEMORANDUM DECISION
AND ORDER

REVERCOMB, District Judge.

The plaintiff filed this claim against the defendant to obtain technical data on the MK–46 torpedo in order to compete for MK–46 requirements synopsized in the March 2, 1987 and July 27, 1988 issues of Commerce Business Daily. The plaintiff contends that the defendant's failure to provide the information violates the Small Business Act, 15 U.S.C. § 637, the Competition in Contracting Act, 10 U.S.C. § 2301, and the Freedom of Information Act. This matter is before the Court pursuant to the Parties' cross-motions for summary judgment.

## I. Small Business Act

■ The Small business Act provides that "[f]or any contract to be let by any Federal agency, such agency shall provide to any small business concern upon its request . . . a copy of bid sets and specifications with respect to such contract." 15 U.S.C. § 637b.

The March 2, 1987 and July 27, 1988 requirements synopsized in the Commerce Business Daily were for entire torpedoes. *See* Declaration of Stephen Caracciolo, at ¶ 3. However, the plaintiff has conceded that it does not have the capability to supply the MK–46 torpedo. *See* Exhibit 1 to *Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Defendant's Opposition to Plaintiff's Cross Motion for Summary Judgment* (Aug. 5, 1988 Letter from Counsel for Colonial Trading Corporation to Wade Anderson of Naval Sea Systems Command) ("Colonial is unable to supply the MK–46 torpedo"). Rather, plaintiff is a self-described small business which manufactures and deals military and commercial *spare* parts. *See* Declaration of Harvison W. Hunt at ¶ 1; Plaintiff's Statement of Facts as to Which There is No Genuine Issue ¶ 1. Since plaintiff cannot build the entire torpedo, and in fact has no desire to build the entire torpedo,[1] it is not entitled to the corresponding data pursuant to 15 U.S.C. § 637b.

## II. Competition in Contracting Act

■ The Competition in Contracting Act recognizes situations in which competitive procedures need not be used. *See* 10 U.S.C. § 2304(c)(1–7). In the instant case, the defendant invoked exception (c)(1) which provides that other than competitive procedures may be used when "the property or services needed by the agency are available from only one responsible source or only from a limited number of responsible sources and no other type of property or services will satisfy the needs of the agency." 10 U.S.C. § 2304(c)(1).

As discussed earlier, the plaintiff does not have the capability to build the torpedo. Accordingly, the plaintiff can hardly challenge the reasonableness of the defendant proceeding sole source with the procurement pursuant to 10 U.S.C. § 2304(c)(1). If the plaintiff is unable to build the entire torpedo it logically cannot be considered as an alternative responsible source entitled to receive technical date on the procurement. The contention that the plaintiff should be allowed to obtain data and submit bids on a torpedo that the plaintiff concedes it cannot supply is patently without merit.

## III. Freedom of Information Act

[3] The plaintiff finally contends that it is entitled to the unclassified drawings under the Freedom of Information Act.[2] However, exemption 3 allows the withholding of information prohibited from disclosure by another statute provided that the statute "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

The defendant contends that it is entitled to withhold the unclassified drawings pursuant to exemption 3 because 10 U.S.C. § 130, and the DOD's implementing directive,[3] prohibits such disclosure. Section 130 allows:

> Upon receipt of a request for technical data in the possession of, or under the control of, the Department of Defense, the controlling DOD office shall determine whether such data are governed by this Directive. The determination shall be based on the following:
> a. The office's finding that such data would require an approval, authorization, or license for export under E.O. 12470 . . . or the Arms Export Control Act . . . and that such data may not be exported pursuant to a general, unrestricted license . . . or exemption. . . .

---

1. The plaintiff's Statement of Facts Not Controverted by the Defendant expressly provides that the plaintiff wants the technical data only "to bid on or perform Navy contracts or foreign military sales for MK–46 *spares.*" ¶ 2.

2. The defendant had also been withholding materials pursuant to exemption 1 but the materials have been declassified and accordingly released to plaintiff.

3. DOD Directive 5230.25 provides, in pertinent part:

the Secretary of Defense may withhold from public disclosure any technical data with military or space application in the possession of, or under the control of, the Department of Defense, if such data may not be exported lawfully outside the United States without an approval, authorization, or license under the Export Administration Act of 1979 (50 U.S.C. App. 2401–2420) or the Arms Export Control Act (22 U.S.C. 2751 et seq.).

Section 130 is clearly an exemption 3 statute where it clearly and specifically identifies the "particular types of matters to be withheld."

Indeed, the legislative history to section 130 is clear in its intent to provide for the withholding of unclassified technical data with military or space application pursuant to exemption 3. In its report on the authorization bill which included Section 130, the Senate Armed Services Committee specifically noted: "Currently, blueprints and military specification for weapons and other military equipment, drawings, plans, technical instructions and other similar unclassified technical data can in many cases be released to foreign countries and foreign competitors under the Freedom of Information Act." S.Rep. No. 98–174, 98th Cong., 2d Sess. 260 (1983), U.S.Code Cong. & Admin.News 1983, pp. 1081, 1150. Access to such data under the FOIA is exacerbated by the fact that, according to the committee, "cottage industries have sprung up to systematically obtain and catalogue such technical data, which they then market throughout the world. Once released, DOD cannot limit its redissemination." *Id.* As the committee noted, the data which

section 130 protects could not be exported outside the United States without an authorization, approval, or license under the Arms Export Control Act, or the Export Administration Act of 1979: "These laws are intended to control the exportation of technical data which relate to certain arms, ammunition or implements of war or would contribute significantly to the military potential of another nation to the detriment of the United States." *Id.*

Although the plaintiff conclusorily contends that the unclassified technical data at issue in this case is not subject to 10 U.S.C. § 130 and the implementing DOD Directive, the declaration of William Denton Morris clearly supports the fact that the data is subject to export control pursuant to the provisions of the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 120 et seq., which implements the statutory authority of the President under section 38 of the Arms Export Control Act, 22 U.S.C. § 2778, to promulgate regulations with respect to control of exports of defense articles and defense services.

■ The plaintiff further contends, however, that the data at issue is not subject to the ITAR because it is already in the public domain where the Navy has released technical data to the public as part of other solicitations for spare parts of the torpedo. However, the data which the plaintiff seeks in the instant case is not simply for spare parts to the torpedo but the technical breakdown data to the *entire* torpedo. The plaintiff has failed to establish that the entire blueprint to the torpedo is in the public domain.[4]

---

b. The office's judgment that the technical data under consideration disclose critical technology with military or space application. For purposes of making this determination, the Military Critical Technologies List (MCTL).... shall be used as general guidance.

4. Indeed, the plaintiff has failed to establish that even the data to some of the torpedo's spare parts are in the public domain. The definition of "public domain" is set forth in 22 C.F.R. § 120.18 which provides:

"Public domain" means information which is published and which is generally accessible or available to the public:

(a) Through sales at newsstands and bookstores;

(b) Through subscriptions which are available without restriction to any individual who desires to obtain or purchase the published information;

(c) Through second class mailing privileges granted by the U.S. Government; or,

(d) At libraries open to the public.

In the instant case, the Navy has released data packages for the purpose of receiving competitive bids on spare parts for the torpedo. Although this may constitute a release of the information into the public domain under a colloquial usage of the phrase, the plaintiff has failed

Accordingly, the defendant is entitled to rely upon exemption 3 to FOIA where, under section 130 and the Arms Export Control Act, the unclassified technical data is required to be withheld.

It hereby is

ORDERED that Defendant's Motion for Summary Judgment be, and the same hereby is, GRANTED; and it is further

ORDERED that Plaintiff's Motion for Summary Judgment be, and the same hereby is, DENIED.

to identify any released information which falls within the regulatory definition of "public do-