**Keith MAYDAK, Plaintiff,**

v.

**U.S. DEPARTMENT OF JUSTICE et al., Defendants.**

**No. CIV.A. 00–0562(RBW).**

United States District Court, District of Columbia.

March 21, 2003.

---

6. An Order consistent with this Memorandum Opinion is issued separately.

Keith Maydak, North Versailles, PA, pro se.

Mark E. Nagle, Laurie J. Weinstein, U.S. Attorney's Office, Washington, DC, for defendants.

## *MEMORANDUM OPINION*

WALTON, District Judge.

### I. INTRODUCTION

This action has been filed *pro se* by a federal prisoner under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000), and the Privacy Act ("PA"), 5 U.S.C. § 552a (2000). Plaintiff has named as defendants, the United States Department of Justice ("DOJ"), the Department of the Treasury ("DOT"), the Department of State ("DOS") and the Executive Office of the President's Office of Science and Technology Policy ("EOPOSTP"). In his 59–count amended complaint, plaintiff challenges the agencies' responses to his various requests for information he is seeking to obtain pursuant to the FOIA and the PA. Currently pending before the Court are dispositive motions for either dismissal, summary judgment or partial

summary judgment brought on behalf of each agency or agency-component and plaintiff's cross motions for summary judgment, which he has combined with his oppositions to defendants' dispositive motions. For the reasons outlined below, the Court will take the following action: Deny plaintiff's motions for summary judgment because they do not comply with the filing requirements of Local Civil Rule 7.1(h). In addition, plaintiff has filed separate motions to voluntarily dismiss certain counts of the amended complaint under Fed. R.Civ.P. 41, which are unopposed by defendants. The Court therefore will grant the Rule 41 motions and dismiss counts 1, 2, 15, 29, 36 and 59 accordingly.[1] The Court will deny all of the agencies' motions for summary judgment, except that it will grant the DOT's motion for summary judgment brought on behalf of its component, the Internal Revenue Service ("IRS"), the DOJ's unopposed motion for partial summary judgment brought on behalf of the United States Marshals Service ("USMS"), and part of the DOJ's motion for partial summary judgment brought on behalf of the Federal Bureau of Investigation ("FBI"). Moreover, the Court will grant the DOJ's motions to dismiss the FOIA claim against the Drug Enforcement Administration ("DEA") and the PA claims against the Bureau of Prisons ("BOP").

### II. STANDARDS OF REVIEW

The Court may dismiss a complaint on the ground that it fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) if it appears, assuming the alleged facts to be true and drawing all inference in plaintiff's favor, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Harris v. Ladner,*

---

1. Count 59 is the sole count against the DOS. The Court therefore will deny the DOS's mo-

tion for partial summary judgment on the ground that the motion is now moot.

127 F.3d 1121, 1123 (D.C.Cir.1997), *cert. denied* 531 U.S. 1147, 121 S.Ct. 1087, 148 L.Ed.2d 962 (2001); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994).

Summary judgment is appropriate when no genuine issues of material fact are in dispute and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In a FOIA action, a federal agency is required to release all records that are responsive to a request for the production of the records. The Court is authorized under the FOIA "to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *see Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 139, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). When a FOIA requester files a civil complaint based on the agency's alleged improper withholding of records, the agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (internal citation and quotation omitted); *see also Maydak v. Dep't of Justice,* 218 F.3d 760, 764 (D.C.Cir.2000) (the government has the burden of proving each claimed FOIA exemption).

In a FOIA action, the Court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981); *see also Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). "The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Quinon v. FBI,* 86 F.3d 1222, 1227 (D.C.Cir.1996).

The Court will apply these standards to the following review of each agency's dismissal and summary judgment motion.

## III. DISCUSSION

### A. *Department of Justice*

Plaintiff requested a variety of information from the following DOJ components: the BOP, the FBI, the Executive Office for United States Attorneys ("EOUSA"), the DEA and the USMS; some of the requests have been denied. It appears, however, that plaintiff is no longer challenging most of the EOUSA's responses to his requests because of subsequent disclosures made in an unrelated case. *See* Plaintiff's "Motion Pursuant to F.R.Cv.P. 41(a) to Dismiss Counts I, II, XV, and XXXVI Without Prejudice Based on Post–Suit FOIA Disclosures" [Doc. # 83–1].

Summary judgment motions have been filed on behalf of the several DOJ components. Plaintiff has not opposed the USMS' motion for partial summary judgment. The Court therefore will grant that motion as conceded. The Court will address the separately filed motions of the

BOP and the FBI, and the joint motion of the DEA and the EOUSA.[2]

*(1.) The Bureau of Prisons' Motion*

In support of its summary judgment motion [Doc. # 65–2], the BOP proffers the Supplemental Declaration of Henry J. Sadowski ("Sadowski Decl." or "Exhibit B"), Regional Counsel for BOP's Northeast Regional Office, and attachments that include three *Vaughn*[3] indices (Gov't Exhibits B1, C and D). In addition to this evidence and defendants' statement of undisputed facts ("Facts"), the Court will rely on defendants' charts that summarize plaintiff's FOIA requests and coordinate the requests with the counts of the amended complaint. Gov't Exhibits A and A1. At issue are plaintiff's 38 FOIA requests to the BOP for information pertaining to himself, and a hosts of events related to the conditions of his confinement. *See generally* Defendants' Partial Motion to Dismiss or, in the Alternative, for Summary Judgment, Statement of Material Facts Not in Dispute at 2–35. Plaintiff also requested under the Privacy Act, a "copy of the log of disclosures of information relating to [him] to other Federal agencies or third parties, whether such disclosure was oral, written or electronic." Facts ¶ 29 (Count 14); Gov't Exhibit B3, p. 1. In response to this latter request, the BOP responded that it was not required to maintain such a log, citing the Privacy Act, 5 U.S.C. § 552a (c)(3). It nonetheless performed a search for records "pursuant to the Freedom of Information Act" but failed to locate any responsive records. Facts ¶ 30; Gov't Exhibit B3, p. 2.[4]

Plaintiff has opposed many, but not all of the BOP's grounds for summary judgment on the applicable counts of the amended complaint. The Court finds that plaintiff has not opposed, and therefore has conceded, the BOP's assertions with respect to counts 3–5, 7, 17, 20, 29, 30, 38, 40. The Court will now address the claims related to the following disputed counts: 10, 12, 14, 16, 22, 23, 28, 31, 32 (and duplicate 45), 33, 34, 35, 39, 43, 44, 46, 47, 48, 49, 50, 51, 52, and 53.

*(a.) Privacy Act Claims*

■ In Count 12, plaintiff challenges the BOP's reliance on exemption (k)(6) of the PA as grounds for withholding records pertaining to his "psychological and psychiatric test results, consultation reports, or other records . . . ." Gov't Exhibit B3, Attachment 2 ("Att.") at 1. The BOP located a four-page document as a result of its search but determined that its release "could reasonably be expected to endanger the life or physical safety of any person and would compromise the objectivity or fairness of the testing or examination process." *Id.*, Att. at 2. The BOP invoked PA exemption (k)(6) and FOIA exemption 7(F) as support for its position. *Id.* Plaintiff administratively appealed the decision. *Id.*, Att. at 3. The administrative appeal

---

2. Initially, the latter joint motion was brought also on behalf of the Department of Defense's Defense Logistics Agency ("DLA"). Defendants withdrew the part of the motion that had been filed on behalf of the DLA and subsequently joined the DLA in the motion filed on behalf of the EOPOSTP [Doc.#70, 76 (Order)]. However, neither the Department of Defense nor its component, the DLA, is named, or has been joined, as a party to this action. Therefore, the Court concludes that it is unnecessary to address the merits of the part of the summary judgment motion filed on behalf of the DLA, and that part of the motion is stricken.

3. *See Vaughn v. Rosen*, 484 F.2d at 826.

4. The PA does not bar disclosure of documents if they are otherwise required to be disclosed under the FOIA. 5 U.S.C. § 552a (b)(2); *see Greentree v. United States Customs Serv.*, 674 F.2d 74, 79 (D.C.Cir.1982).

was denied based on the determination that only "[o]ne document [was] responsive to [his] request . . ." and that the one document was exempt from disclosure pursuant to PA exemption (j)(2) and FOIA exemption 2. *Id.,* Att. at 5. The BOP now reasserts exemption (k)(6) of the PA as the basis for withholding the document. Both exemptions (j)(2) and (k)(6) of the PA authorize the head of an agency to exempt certain systems of records from the statute's access provisions, *see* discussion below, but exemption (k)(6) applies only to "testing or examination material used solely to determine individual qualifications for appointment or promotion in the Federal service . . . ." 5 U.S.C. § 552a(k)(6). Thus, plaintiff correctly avers that exemption (k)(6) "simply has nothing to do with me. I was an inmate . . .[,] was not a Federal service employee . . . [and] did not take the test in connection with any prison job." Plaintiff's Motion for Summary Judgment . . . With Respect to Count XII [Doc. # 89–1], Exhibit A ¶ 13.

■ In Count 14 of the amended complaint, plaintiff challenges the BOP's claim that it is not required to comply with the PA's disclosure accounting requirement provision, which provides that:

Each agency, with respect to each system of records under its control, shall—

(1) except for disclosures made under subsections (b)(1) or (b)(2) of this section, keep an accurate accounting of—

(A) the date, nature, and purpose of each disclosure of a record to any person or to another agency made under subsection (b) of this section; and

(B) the name and address of the person or agency to whom the disclosure is made;

(2) retain the accounting made under paragraph (1) of this subsection for at least five years or the life of the record, whichever is longer, after the disclosure for which the accounting is made;

(3) except for disclosures made under subsection (b)(7) of this section, make the accounting made under paragraph (1) of this subsection available to the individual named in the record at his request; and

(4) inform any person or other agency about any correction or notation of dispute made by the agency in accordance with subsection (d) of this section of any record that has been disclosed to the person or agency if an accounting of the disclosure was made.

5 U.S.C. § 552a(c). Plaintiff argues that the BOP is not exempt from the accounting requirement. Specifically, the BOP contends that it "is exempt from [the accounting provision] with respect to logs of disclosure," Sadowski Decl. ¶ 34, but this statement is incorrect. Exemption from the accounting requirement of § 552a(c) is not as expansive as seemingly being suggested by the BOP. Rather, it exempts only intragency disclosures (subsection (b)(1))and FOIA disclosures (subsection (b)(2)) from the accounting requirement. The BOP has not asserted that any disclosures it may have made about plaintiff fall within the limited categories that are exempted from the accounting requirement.

Notwithstanding the preceding discussion, plaintiff's PA claims must be rejected because the BOP has specifically exempted its systems of inmate records from the access provisions of § 552a(c)(3), *see* 28 C.F.R. § 16.97(a); Sadowski Decl. ¶ 8, as it is permitted to do. 5 U.S.C. § 552a(j).[5]

---

**5.** 5 U.S.C. § 552a(j) provides, in part:

The head of any agency may promulgate rules, in accordance with the requirements

Plaintiff therefore has no right of access to the records contained in the BOP's systems of inmate records and consequently has failed to state a claim upon which relief can be granted. Thus, the Court will dismiss the PA claims against the BOP pursuant to 28 U.S.C. § 1915A (b)(1) (requiring the court to dismiss a prisoner's complaint in whole or in part as soon as practicable if, among other grounds, it fails to state a claim upon which relief can be granted).

### (b.) *Freedom of Information Act Claims*

The BOP withheld records requested by plaintiff, either in part or in their entirety, under FOIA exemptions 2, 5, 6 and 7. *See* 5 U.S.C. § 552(b); Gov't Exhibits A, B1, C and D (*Vaughn* indices). As to each disputed claim, plaintiff argues that the BOP has not provided sufficient information for the Court to conclude that the agency properly withheld information under the exemptions and that it conducted an adequate search for responsive records. In addition, plaintiff argues that the BOP has not adequately justified withholding certain records in their entirety. The Court agrees with all of plaintiff's contentions, except with respect to one part of the BOP's withholdings under exemption 2.

### Withheld Records

"To justify summary judgment, a declaration must provide detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'" *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C.Cir. 1998) (quoting *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C.Cir.1987)). In

*King*, the Court held that "affidavits cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" 830 F.2d at 219 (internal footnote and citations omitted). As a general observation, this Court finds that the BOP's declaration is too conclusory, vague and sweeping to support summary judgment. In most instances, the BOP relies on multiple exemptions to justify withholding the same information.

However, it has not matched the withheld information with the claimed exemption and explained how the particular exemption applies.

### (i) *Exemption 2*

■ Exemption 2 of the FOIA exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2); *see Crooker v. ATF*, 670 F.2d 1051, 1073 (D.C.Cir.1981) (exemption 2 applies to material "used for predominantly internal purposes"). To qualify for this exemption, the document must not only be internal, but must also relate to an existing agency rule or practice. *See Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 794–98 (D.C.Cir.1990). To properly claim exemption 2, the agency must show that the material withheld falls within the terms of the statutory language. If it does, the agency must then show that "disclosure [may] significantly risk[ ] circumvention of agency regulations or statutes," *Crooker*, 670 F.2d at 1074, or that "the material relates to trivial administrative matters of no genuine public interest."

(including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and

(i) if the system of records is ... (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws ....

*Founding Church of Scientology v. Smith,* 721 F.2d 828, 830, n. 4 (D.C.Cir.1983).

■ The BOP asserted exemption 2 to justify withholding "internal portions of staff manuals relating to security issues within BOP; [ ] SENTRY codes; and [ ] staff statements regarding internal matters." BOP's Memorandum of Points and Authorities in Support of Defendant Federal Bureau of Prisons' Motion to Dismiss or in the Alternative for Summary Judgment at 21 (citing Exhibits B, B1, B2, C and D). The BOP properly justified withholding the codes as "internal codes for electronic system, SENTRY, for obtaining information regarding inmates" and on the ground that inmates "could access information regarding other inmates" if they gained access to the codes. Exhibit C. The courts have also consistently found no significant public interest in the disclosure of identifying codes and similar information. *See Lesar v. Dep't of Justice,* 636 F.2d 472, 485–86 (D.C.Cir.1980); *Blanton v. Dep't of Justice,* 63 F.Supp.2d 35, 43 (D.D.C.1999); *Albuquerque Publishing Company v. Dep't of Justice,* 726 F.Supp. 851, 854 (D.D.C.1989).

■ As for the remaining information, the BOP has not provided sufficient descriptions in either the Sadowski declaration or the *Vaughn* indices for the Court to conclude that it properly withheld portions of staff manuals or staff statements about internal matters under exemption 2. The BOP does not elaborate on the nature of the withheld information beyond the language quoted in the preceding paragraph, which merely describes the information as related to internal matters. The Court therefore cannot determine whether the information, assuming it to be predominantly internal, is exempt because disclosure would risk circumvention of the law or agency regulations or because the information is purely administrative and therefore is of no significant public interest. Accordingly, summary judgment as to the staff manuals and staff statements is not warranted pursuant to exemption 2. Summary judgment is granted on the BOP's justification for withholding internal codes pursuant to exemption 2.

(ii) *Exemption 5*

■ Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 522(b)(5). This provision "exempt[s] those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (footnote omitted); *see also FTC v. Grolier, Inc.,* 462 U.S. 19, 26, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). "As such, [exemption 5] is interpreted to encompass, *inter alia,* three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." *Tax Analysts v. IRS,* 294 F.3d 71, 76 (D.C.Cir.2002) (citing *Burka v. HHS,* 87 F.3d 508, 516 (D.C.Cir.1996)). The provision has general reference to the rules of civil discovery under the Federal Rules of Civil Procedure, but, as applied to the government, has been held to recognize various so-called "governmental privileges," *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 802, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), including the "executive 'deliberative process' privilege." *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980) (quoting *EPA v. Mink,* 410 U.S. 73, 85–90, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)) (citation omitted).

■ The BOP asserted exemption 5 to justify withholding "information that

was compiled during an investigation or from an outside source and, if released, it could inhibit and affect the way staff communicate." Sadowski Decl. ¶ 14. Sadowski avers that "we reviewed the documents and those that were identified to be statements, opinions and conclusions of staff were withheld because release of this information could allow inmates to alter their actions." *Id.* ¶ 15. In its memorandum of law at pages 21–24, the BOP, through counsel, appears to argue that the withheld information falls under the deliberative process privilege, but the argument is not supported with any evidence. To qualify under the deliberative process privilege, the withheld information must have been pre-decisional, *i.e.*, "generated before the adoption of an agency policy" and deliberative, *i.e.*, "reflects the give-and-take of the consultative process." *Coastal States,* 617 F.2d at 866. A pre-decisional document that "is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public" can lose its exemption 5 status. *Coastal States,* 617 F.2d at 866.

Neither the Sadowski declaration nor the *Vaughn* indices identify the information specifically withheld under exemption 5. Nor do they identify an agency decision or policy to which the withheld information purportedly contributed. It is also neither explained nor discernible how the withheld information figured into a deliberative process concerning BOP policy or litigation. Besides, contrary to defense counsel's argument, the Sadowski declaration reveals a fundamental flaw in the administrative processing of plaintiff's request, as it appears that the exemption 5 determination turned not on whether the information was privileged but rather on the irrelevant concern that disclosure "could allow inmates to alter their actions." Sadowski Decl. ¶ 15. Summary judgment on the BOP's

exemption 5 claim is therefore unwarranted.

### (iii) *Exemption 6*

 FOIA Exemption 6 protects information about individuals contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that "applies to a particular individual" qualifies for consideration under this exemption. *Dep't of State v. Washington Post Co.,* 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982); *see also New York Times Co. v. NASA,* 920 F.2d 1002, 1005 (D.C.Cir.1990) (en banc). The information is not protected if the requester establishes an overriding public interest in disclosure by showing that the information is necessary to "shed any light on the [unlawful] conduct of any Government agency or official." *Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 772–73, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *accord SafeCard Services, Inc., v. SEC,* 926 F.2d 1197, 1206 (D.C.Cir.1991).

 The BOP avers only that it "asserted Exemption (b)(6) to excise or withhold ... information [ ] ... [that has no public interest and could invade personal privacy], in documents more fully detailed in the *Vaughn Indexes* attached hereto and incorporated herein." Sadowski Decl. ¶ 18. However, the *Vaughn* indices do not identify or describe the specific information withheld under exemption 6. As such, summary judgment based on this exemption must be denied.

### (iv) *Exemption 7*

 FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but

only to the extent that the production of such records or information" would cause one of six enumerated harms. 5 U.S.C. § 552(b)(7)(A)-(F). The BOP justifies withholding information under subsections C, D, E and F of § 552(b)(7).[6] Exemption 7 requires an agency to prove that the withheld records were compiled for law enforcement purposes "before ... withhold[ing] requested documents on the basis of any of [this exemption's] subparts." *Pratt v. Webster*, 673 F.2d 408, 416 (D.C.Cir.1982). The agency may satisfy its threshold burden by a declaration that "establish[es] a rational 'nexus between the investigation and one of the agency's law enforcement duties,' ... and a connection between an 'individual or incident and a possible security risk or violation of federal law' ...." *Campbell*, 164 F.3d at 32 (quoting *Pratt*, 673 F.2d at 419) (other internal citations omitted); *but see also Tax Analysts*, 294 F.3d at 77–79 (rejecting district court holding that exemption 7(E) requires the existence of a specific law enforcement investigation).

■■■■ The BOP avers that it "maintains a variety of systems of records pertaining to inmates.... The Inmate Central Records System ... [,] commonly termed the Inmate Central File, is the system of records routinely utilized to collect and maintain information concerning the day-to-day activities and events occurring during the confinement of an inmate." Sadowski Decl. ¶ 9. It further avers that "Inmates' Central Files are compiled for law enforcement purposes," *id.* ¶ 11, and while this conclusory statement may have merit, it is alone inadequate to support such a finding. Although agencies that "specialize[ ] in law enforcement [are] enti-

tled to deference ...," [7] *Campbell*, 164 F.3d at 32, "[t]his court's 'deferential' standard of review is not, however, 'vacuous.' " ... *Id.* (quoting *Pratt*, 673 F.2d at 421). "If the [agency's] declaration[ ] 'fail[s] to supply facts' in sufficient detail to apply the *Pratt* rational nexus test, then a court may not grant summary judgment for the agency." *Id.* (quoting *Quinon v. FBI*, 86 F.3d 1222, 1229 (D.C.Cir.1996)) (citation omitted); *see also Jefferson v. Dep't of Justice, Office of Professional Responsibility*, 284 F.3d 172, 179 (D.C.Cir. 2002) (citation omitted) (the agency must "produce evidence whereby the district court would be in a position to make the required threshold evidentiary determination" under exemption 7(C)). Moreover, plaintiff's FOIA requests covered such a variety of occurrences and events that, as discussed below, it is questionable if BOP met its obligation to search all files reasonably expected to contain responsive records if, as it appears, it searched only plaintiff's inmate central file. The BOP's failure to satisfy the threshold law enforcement requirement defeats its motion for summary judgment under exemption 7.

## Adequacy of the Search

■■■■ In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *International Trade Overseas, Inc. v. Agency for International Development*, 688 F.Supp. 33, 36 (D.D.C.1988) (citing *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.Cir. 1984)). The agency to which a FOIA request is submitted is required "to make a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to pro-

---

6. At the administrative level, the BOP relied on exemption 7(A) to withhold records but it "is no longer asserting" that exemption. Facts, n. 2.

7. *See Duffin v. Carlson*, 636 F.2d 709, 713 (D.C.Cir.1980) (finding the Bureau of Prisons to be a "criminal law enforcement authority....").

duce the information requested." *International Trade Overseas, Inc.,* 688 F.Supp. at 36 (*quoting Marrera v. Dep't of Justice,* 622 F.Supp. 51, 54 (D.D.C.1985)) (citation omitted). Because the agency is the possessor of the records and is responsible for conducting the search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. United States Coast Guard,* 180 F.3d 321, 326 (D.C.Cir.1999) (citing *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990); *Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 388 (D.C.Cir.1996); *Weisberg v. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir. 1983)). Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. *Id.* (*citing Founding Church of Scientology v. National Security Agency,* 610 F.2d 824, 837 (D.C.Cir.1979)).

█ Plaintiff challenges the BOP's searches regarding Counts 12, 22, 23, 28, 31, 32 (and duplicate 45), 35, 46, 48, 49, 50, 52, and 53 of his amended complaint. The BOP avers that "[u]pon receipt of each of Maydak's FOIA Requests, a search to determine the location of any and all documents relating to his requests was undertaken. The BOP conducted a systematic search for records by having staff review any files which may contain responsive documents." Sadowski Decl. ¶ 7. This description is wholly inadequate. The BOP does not "describe in any detail what records were searched, by whom, and through what process." *Steinberg v. Dep't of Jus-*

*tice,* 23 F.3d 548, 552 (D.C.Cir.1994) (citation omitted). Moreover, it does not describe the various "systems of records," it maintains, *see* Sadowski Decl. ¶ 9, does not explain its retrieval methods and does not aver that it identified and searched all files reasonably likely to contain records responsive to each of plaintiff's varied requests.[8] On this record, the Court has no basis to independently conclude that the BOP conducted an adequate search for responsive records. *See Oglesby,* 920 F.2d at 68 (citing cases and comparing co-defendants' affidavits to illustrate an affidavit sufficiently detailed to sustain summary judgment for an agency on the adequacy of its search for responsive records); *accord Steinberg,* 23 F.3d at 551–52 (rejecting declaration "so general as to raise a serious doubt whether [the office] conducted a reasonably thorough search of its records," while approving the FBI's "[n]otably more detailed ... [d]eclaration that ... describes with particularity the files that were searched, the manner in which they were searched, and the results of the search.").

### Segregability of Records

█ When responsive documents are withheld in their entirety, this court has an "affirmative duty" to consider whether non-exempt information could have been segregated from exempt information and released. *See Trans–Pacific Policing Agreement v. United States Customs Service,* 177 F.3d 1022, 1027 (D.C.Cir.1999) (internal citations omitted). Here, plaintiff has challenged the BOP's decision to withhold entire documents.

8. It appears from the Sadowski declaration that the BOP searched only plaintiff's "Inmate Central File," Sadowski Decl. ¶ 9, but that file system does not seem to be the logical location for records responsive to plaintiff's requests for information that does not specifically pertain to him. *See, e.g.,* Count 16 (certain manuals) and Count 22 (accident and injury reports in the recreation department, law library hours, memoranda and documents addressing staff conduct).

Entire records are exempt from disclosure when it is shown that "the exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C.Cir.2000) (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C.Cir.1981)). Necessary to this showing is "a relatively detailed description" of the withheld documents. *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C.Cir.1993) (citation omitted).

■ The BOP avers only generally that it reviewed "[e]ach document" to determine if it could segregate and release non-exempt information and concluded "that no further release of meaningful information can be made . . . ." Sadowski Decl. ¶ 39. This conclusory statement does not suffice. *See Krikorian*, 984 F.2d at 466 (the agency must provide sufficient detail in its index and affidavits about the records withheld in their entirety "so that a district court can adequately consider the segregability issue.") (citation omitted). The BOP's description of the records is too sweeping and vague for the Court to resolve the segregability question. In supplementing the record for purposes of further review, the BOP should describe each document that has been withheld in its entirety and explain why the information contained therein could not be segregated and the non-exempt material released.

### Referred Records

■ Plaintiff challenges the BOP's referral of certain records to the offices from which they had originated. The BOP referred two pages of information to a United States probation office and one page of information to the IRS "for review and a direct response to plaintiff." Facts ¶ 110.

Plaintiff claims he has not received a response from those two offices. *See* plaintiff's motion and opposition as to count 35 [Doc.# 97–1] at 3 [page number supplied].

■ The Court must determine if the referral was justified or whether the "referral procedure result[ed] in the improper 'withholding' . . . of [d]ocuments[.]" *Peralta v. United States Attorney's Office*, 136 F.3d 169, 175 (D.C.Cir.1998) (citing 5 U.S.C. § 552(a)(4)(B)). An agency possessing records that originated with another agency is ultimately responsible for processing the records and therefore "cannot simply refuse to act on the ground that the documents originated elsewhere." *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C.Cir. 1983); *see also In re Wade*, 969 F.2d 241, 247–48 (7th Cir.1992). The agency nonetheless may refer the records to the originating agency for "consultation" as to whether certain exemptions apply. *See McGehee*, 697 F.2d at 1110 n. 71 ("consultation, not referral to the originating body, is the only procedure expressly set forth in the [FOIA]") (citing 5 U.S.C. § 552(a)(6)(B)(iii)).

Plaintiff asserts correctly that a United States probation office is not subject to the FOIA's disclosure requirements because it is an arm of the federal courts. *See* 18 U.S.C. § 3602. This conclusion is called for because the FOIA adopts the definition of agency contained in 5 U.S.C. § 551(a)(1)(b), which specifically excludes from its coverage "the courts of the United States." *See* 5 U.S.C. § 552(f). Plaintiff therefore raises a genuine legal issue about the propriety of the BOP's referral of records to a United States probation office for further processing.

Plaintiff requests that the BOP be compelled to release the referred records. While that may ultimately be an appropriate remedy, the Court will refrain from issuing such an order and will instead al-

low the BOP to supplement the record concerning the referred records.

### Rulings on BOP's Motions

For all of the reasons stated above, the BOP's motion to dismiss is granted on the PA claims and denied in all other respects. The BOP's motion for summary judgment is granted regarding the withholding of its internal codes under exemption 2. In all other respects, the BOP's motion for summary judgment is denied without prejudice to renewal upon supplementation of the record.

### (2.) The Federal Bureau of Investigation

In support of it summary judgment motion, the FBI proffers the declaration of Scott A. Hodes ("Hodes Decl."), Acting Chief of the Litigation Unit, FOIAPA Section, Office of Public and Congressional Affairs at FBI Headquarters, and attachments to the declaration, including a *Vaughn* index (Exhibit K). By letter dated December 6, 1997, plaintiff requested from the FBI Headquarters "any and all records, electronic or physical, of which relate to investigations regarding AT & T ...." Plaintiff "targeted" his request to not only the FBI Headquarters but to "all [of its] field offices." He also requested a fee waiver, asserting that "the information will be used to educate the public about the inner workings of the FBI, and will be distributed free to all interested parties on the internet." Hodes Decl., Exhibit A. In response to the FBI's request that plaintiff provide "more specific information," Hodes Decl., Exhibit B, plaintiff stated that he sought "documents where AT & T [as an entity] was the target of any investigation by the FBI from Aug. 1993–present." *Id.*, Exhibit C. By letter dated April 19, 2000, the FBI Headquarters informed plaintiff

that it had reviewed 204 pages of records, of which 77 pages were being released.[9] *Id.*, Exhibit F. The letter further informed plaintiff that "[a] search of the FBIHQ Electronic Surveillance (ELSUR) Index [yielded] no responsive record which indicates that your subject has been the target of an electronic surveillance... [and that] should you desire a check of our field office files, it will be necessary for you to direct your requests to the appropriate field offices." *Id.* By letter dated December 12, 2000, the FBI informed plaintiff that it was resending the disclosed documents to him because the April 19, 2000 mailing that had been sent to the address that appeared on the last correspondence it had received from him before the first mailing had been returned and marked "because it was refused." *Id.*, Exhibit G.

The FBI withheld information under FOIA exemptions 3, 7(C) and 7(D). Plaintiff does not challenge the FBI's justification for withholding information under the latter two exemptions and therefore concedes the issue as to the 89 released pages. Plaintiff does challenge the FBI's withholding of entire documents and the FBI's decision not to conduct searches at its field offices. Plaintiff's administrative appeal of the FBI's actions concerning his FOIA request was denied on March 2, 2001, as untimely. *Id.*, Exhibit J.

### (a.) Record Segregability

The FBI withheld 115 pages of responsive records in their entirety under FOIA exemptions 3 and 7. It avers that "[e]very effort was made to provide plaintiff with all reasonably segregable portions of the records requested and no reasonably segregable non-exempt portions have been withheld. All information withheld

---

9. The FBI released an additional 12 pages of information pages during the course of this litigation, leaving 115 pages that have been withheld in their entirety. Hodes Decl. ¶ 21 and Exhibit K.

is exempt from disclosure either pursuant to a FOIA exemption, because it is so intertwined with protected material that segregation is not possible, or because its release would identify the underlying protected material." Hodes Decl. ¶ 20.

Invoking exemption 3, the FBI avers that it withheld the names of individuals subpoenaed to testify before a grand jury and their grand jury testimony. Hodes Decl. ¶¶ 24–25. Exemption 3 covers records that are "specifically exempted from disclosure by statute ..." provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see also Senate of the Commonwealth of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 582 (D.C.Cir.1987). The FBI invoked this FOIA exemption in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure. Rule 6(e) qualifies as a statute because it was affirmatively "enacted by Congress." *See Fund for Constitutional Gov't v. National Archives and Records Service*, 656 F.2d 856, 867–68 (D.C.Cir. 1981).

The Federal Rule of Criminal Procedure 6(e)(2) prohibits disclosure of "matters occurring before [a] grand jury." *In re: Motions of Dow Jones & Co.*, 142 F.3d 496, 498–501 (D.C.Cir.1998). While acknowledging the existence of a "grand jury exception" to the general disclosure requirements of the FOIA, the Court of Appeals for this Circuit has limited the exception to material that, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."

*Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 582 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C.Cir.)(en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)). The FBI asserts that it withheld entire records under exemption 3, but neither the *Vaughn* index nor the FBI's declaration identifies or describes the specific records withheld. The Court therefore cannot determine whether the exemption was properly invoked.

With respect to exemption 7, the FBI's *Vaughn* index describes the following records as having been withheld in their entirety under exemption 7(C) and, in two instances, under exemption 7(D): third-party arrest records (total of 21 pages), third-party police records (25 pages), third-party records (10 pages). *See Vaughn* index pages 37–53, 56–80, 81–84, 170–179. In addition, the FBI asserts exemption 7(C) as justification for withholding what appears to be business records. *See id.* pages 92–129, 135–140, 145–152, 156–159, 187, 193–194.

The FBI has satisfied the threshold exemption 7 requirement that the records were compiled for law enforcement purposes. It generally describes the Central Records System as containing "information essential to ongoing investigations ... used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal statutes." Hodes Decl. ¶ 15. It further avers that it located a file concerning "a law enforcement investigation of a former AT & T employee and a third party in the theft of Network Telecommunications Systems Equipment ('NTSE') in the St. Louis area. The former AT & T employee was sentenced to 18 months confinement in a federal prison." Hodes Decl. ¶ 17.

■ The FBI invoked exemption 7(C) as justification for withholding "third-party" records in their entirety. Exemption 7(C) protects information contained in law enforcement files that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The District of Columbia Circuit has limited the protective scope of exemption 7(C) to "the specific information to which it applies [*i.e.*, names, addresses and other identifying information], [but] not the entire page or document in which the information appears[.]" *Mays,* 234 F.3d at 1327. Here, the FBI has not explained why it could not excise the third-party identifying information and release any non-exempt information appearing in each record. The Court therefore cannot conclude that the FBI properly withheld third-party documents in their entirety under exemption 7(C).

■ As for exemption 7(D), the FOIA protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or
>
> information compiled by a criminal law enforcement authority in the course of a criminal investigation . . .[,] information furnished by a confidential source.

5 U.S.C. § 552(b)7(D). To properly invoke exemption 7(D), an agency must show either that a source provided the information to the agency under an express assurance of confidentiality or that the circumstances surrounding the imparting of information support an inference of confidentiality. *Dep't of Justice v. Landano,* 508 U.S. 165, 179–81, 113 S.Ct. 2014, 124

L.Ed.2d 84 (1993). The government is not entitled to a presumption that all sources supplying information in the course of a criminal investigation are confidential sources and its mere use of the words "confidential source" is insufficient. Rather, it must provide " 'probative evidence that the source[s] did in fact receive an express grant of confidentiality,' " *Campbell,* 164 F.3d at 34 (quoting *Davin v. Dept. of Justice,* 60 F.3d 1043, 1061 (3rd Cir.1995)), or evidence supporting a determination that "the particular source spoke with an understanding that the communication would remain confidential." *Id.* at 34 (quoting *Landano,* 508 U.S. at 172, 113 S.Ct. 2014).

■ The FBI avers that it withheld "the identity of, as well as specific information provided by, individuals interviewed by [ ] two local police departments." Hodes Decl. ¶ 39. The FBI asserts that the individuals who provided the information are protected by an implied grant of confidentiality and that the police departments are protected by an express grant of confidentiality. This information, however, is inadequate for the Court to reasonably find that the withheld information was provided under either an express or implied grant of confidentiality. As for an implied grant of confidentiality, the FBI has described neither the type of information disclosed nor the individuals' relationships to the target of the investigation. The Court therefore has no basis to conclude that a grant of confidentiality may be reasonably inferred. *See Quinon,* 86 F.3d at 1232 ("Whether the informants in this case may be presumed to have disclosed information to the FBI under an expectation of confidentiality must surely depend on both the nature of the disclosure and the nature of their relationships with the subjects of the investigation.").

■ As for an express grant of confidentiality, the FBI avers that "[b]oth police departments have been contacted concerning the releasability of their information. Both local police departments requested that their information continue to be protected in its entirety as provided by a confidential source." Hodes Decl. ¶ 39. That, standing alone, is wholly insufficient to sustain a finding that at the time the information was imparted, the local police departments were acting under an express grant of confidentiality. In *Campbell*, the Court noted that probative evidence of an express grant of confidentiality could "take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarity situated sources." 164 F.3d at 34. Both the *Vaughn* index and the Hodes declaration fall short of what is necessary. The index does not include the withheld pages in redacted form that may reveal a confidentiality marking. The Hodes declaration suggests that the local departments were contacted during the course of this litigation about "continue[d]" confidentiality, but it does not provide any evidence about the granting of the alleged confidentiality. Specifically, Hodes does not assert personal knowledge about the circumstances surrounding the imparting of the information and, as indicated above, the record does not provide any other evidence from which an express grant of confidentiality may be reasonably inferred. Without more, the Court cannot conclude that the FBI properly justified withholding entire records under exemption 7(D).

(b.) *Adequacy of the Search*

■ Plaintiff challenges the adequacy of the FBI's search for responsive records because it failed to search the FBI field offices as he had requested. It is undisputed that the FBI did not conduct a search of its field offices. However, the FBI informed plaintiff that "should you desire a check of our field office files, it will be necessary for you to direct your requests to the appropriate field offices." Hodes Decl., Exhibit F. That notification was consistent with DOJ FOIA regulations, which state in relevant part, "[i]n most cases, your FOIA request should be sent to a component's central FOIA office. For records held by a field office of the Federal Bureau of Investigation (FBI) or the Immigration and Naturalization Service (INS), however, you must write directly to that FBI or INS field office address. . . ." 28 C.F.R. § 16.3(a).

■ Under the FOIA, "federal jurisdiction" is dependent upon a showing that an agency has (1) "improperly" (2) "withheld" (3) "agency records." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). An improper withholding may arise from an agency's failure to conduct an adequate search, which "is 'dependant upon the circumstances of the case.'" *Weisberg v. Dep't of Justice*, 705 F.2d at 1351 (quoting *Founding Church of Scientology*, 610 F.2d at 834). The circumstances here cannot support a conclusion of an improper withholding. The FOIA obligates an agency to process a request that, among other things, "is made in accordance with published [agency] rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). The FBI regulations require FOIA requesters seeking records from field offices to write directly to the

respective field office. And, the FBI informed plaintiff of that fact. It had no statutory obligation to proceed with a search of all of its field offices, and the Court cannot compel such a search where, as here, the record lacks any evidence of agency bad faith. Accordingly, the Court will grant partial summary judgment to the FBI on the claims arising from the adequacy of its search for responsive records.

### (3.) The Drug Enforcement Administration

██ By letter dated October 3, 1998, plaintiff requested the following information from the DEA:

1. All reference material which teaches how to become a successful drug dealer; 2. A list of sources in Pennsylvania where drugs (e.g., cocaine, heroin, marijuana, etc.) can be obtained at good prices; 3. A guidebook or manual which gives advice on avoiding detection; 4. A list of crooked D.E.A. agents who sell drugs on the side; 5. A list of all informants and snitches in Pennsylvania so I can avoid them; 6. Instructions on converting cocaine to crack; 7. A list of police departments which do not have drug sniffing dogs; 8. Any instructions on successfully growing marijuana; 9. Anything else good that you have lying around that will aid me in my goal to become an honest, fair, and successful drug dealer.

Defendants' Partial Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc.# 52], Exhibit D. Neither party provides evidence of the DEA's response to the request, but it is undisputed that the DEA did not conduct a search for responsive records. *See id.*, Defendants' Statement of Material Facts Not in Dispute ¶¶ 48–49 (citing amended complaint).

The DEA argues that the Court lacks subject matter jurisdiction over the claim related to the request for the above nine items because plaintiff did not submit a proper FOIA request. *Id.*, Memorandum of Points and Authorities at 15–16. Specifically, the DEA argues that plaintiff submitted "a request for information not records which would have been created or in the control of the agency." *Id* at 15. It therefore argues that it had no obligation to conduct a search because it "would not have records which would help plaintiff achieve his goal of becoming 'an honest fair and successful drug dealer,'" which, in any event, would be contrary to its "mission and the statutes which it is charged with enforcing[ ]" the nation's drug laws. *Id.* Despite the DEA's position, the Court finds that it has subject matter jurisdiction to determine the propriety of the request and the DEA's response to it. *See* 5 U.S.C. § 552(a)(3)(A) (an agency is obligated to make records available "upon any request ... which (i) reasonably describes such records").

██ As a general rule, a FOIA requester's purpose is irrelevant to an agency's FOIA obligations. *See Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 771, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *North v. Walsh*, 881 F.2d 1088, 1096 (D.C.Cir.1989). The DEA's response based on plaintiff's reprehensible reasons for wanting the information therefore appears at first blush unjustified. However, when the request here is stripped of plaintiff's motives, it fails to qualify as a reasonable FOIA request. "Under [the] FOIA, an individual may obtain access to records 'written or transcribed to perpetuate knowledge or events.' ... [The] FOIA neither requires an agency to answer questions disguised as a FOIA request, [n]or to create documents or opinions in response to an indi-

vidual's request for information." *Hudgins v. IRS*, 620 F.Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C.Cir.1987), *cert. denied*, 484 U.S. 803, 108 S.Ct. 47, 98 L.Ed.2d 12 (1987) (citations omitted). Plaintiff's request was no more than a series of questions or requests for information that went beyond the scope of the FOIA.[10] Accordingly, the Court will dismiss plaintiff's claim against the DEA *sua sponte* for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915A (requiring the district court to screen and dismiss as soon as practicable a prisoner's complaint or portions thereof that fail to state a claim).

### (4.) The Executive Office for United States Attorneys

■ As mentioned above, plaintiff has voluntarily dismissed most of his claims against this DOJ component in light of subsequent disclosures made in an unrelated case. *See supra* at 32. However, plaintiff maintains his challenges to the EOUSA's responses related to the United States Attorneys Office for the Northern District of New York (Count 11) and the Southern District of West Virginia (Count 24).[11] By letter dated April 6, 1998, plaintiff requested records about himself located in the Northern District of New York, the Southern District of West Virginia and the Northern District of Illinois. Plaintiff also sought records from those offices pertaining to the Pegrine Financial Group.

Defendants' Partial Motion to Dismiss, or in the Alternative, for Summary Judgment [Doc. # 52], Declaration of Suzanne Little ("Little Decl."), Exhibit 18. The EOUSA located no responsive records.

■ Plaintiff challenges the adequacy of the search for responsive records. Although the EOUSA avers that the "FOIA contact" at the respective offices conducted searches, it neither identifies those individuals nor provides any details about the searches. *See* discussion *supra* at 39–40. Moreover, it has not averred that it searched all files reasonably likely to contain responsive records or provided any evidence from which an inference may be reasonably drawn. "At the very least, [the agency is] required to explain in its affidavit that no other record system was likely to produce responsive records." *Oglesby*, 920 F.2d at 68. Accordingly, the EOUSA's motion for summary judgment must be denied.

### B. Executive Office of the President's Office of Science and Technology Policy ("EOPOSTP")

In support of its motion [Doc.# 70], the EOPOTSP proffers the declaration of Shana Dale ("Dale Decl."), Chief of Staff and General Counsel of the EOPOTSP. By letter dated January 13, 1998, plaintiff requested records concerning reports, complaints, investigations and inquiries

---

**10.** Plaintiff's description of the request set forth in his opposition to the DEA's motion is substantially different from the one he submitted to the agency for processing. *See* Opposition [# 84] at 2–3; *compare with* the original request set forth above. Perhaps, had plaintiff formulated his original request as he does in his opposition, the DEA would have had some basis to conduct a search for records. However, the Court cannot compel a search of what effectively is a new request because its jurisdiction extends only to the DEA's response to the request submitted in October

1998. *See Bonner v. Dep't of State*, 928 F.2d 1148, 1152–53 (D.C.Cir.1991) (judicial review of a FOIA claim generally is limited to the time of the agency determination).

**11.** The EOUSA processes FOIA and PA requests for all Offices of the United States Attorneys. *See* Defendants' Partial Motion to Dismiss, or in the Alternative, for Summary Judgment [Doc. # 52], Declaration of Suzanne Little ¶ 1.

pertaining to AT & T or Bell Laboratories. Dale Decl., Exhibit 1. Plaintiff narrowed his request by letter dated February 4, 1998, to include only responsive records that were "eighteen (18) months old or less." *Id.,* Exhibit 3. By letter dated April 27, 1998, the EOPOTSP informed plaintiff that it had located seventeen documents and was releasing six of the documents in their entirety. The EOPOTSP withheld nine of the documents, citing FOIA exemptions 1 and 4, and referred two documents to the Department of Defense's Defense Logistics Agency ("DLA"). *Id,* Exhibit 4. Upon the advise of the DLA, the EOPOTSP withheld the two referred documents in their entirety under exemption 3. *Id.,* Exhibits 7–8.

On administrative appeal of its decision, the EOPOTSP reconsidered the number of documents it was obligated to disclose (increasing it from six to seven), and then determined that those seven documents could be released in their entirety. *Id.,* Exhibit 6. The EOPOTSP upheld the initial decision to withhold three documents in their entirety under exemption 4. *Id.* The EOPOTSP did not address the DLA records at the administrative appeal level and now acknowledges that the administrative appeal response letter contained errors. Dale Decl. ¶ 10. Those errors do not affect this litigation, however, because the exhaustion of administrative remedies is not at issue here. The EOPOTSP continues to maintain that its decision to withhold records in their entirety under exemptions 3 and 4 was proper. Plaintiff counters that the EOPOTSP has not justified withholding the records in their entirety and under the claimed exemptions.

*(1.) Exemption 3*

██ On the DLA's advise, the EOPOTSP withheld the two referred records pursuant to FOIA exemption 3, described

as "briefing slides," claiming that they were protected from disclosure under 10 U.S.C. § 130 (1998). *See* exemption 3 discussion *supra* at 40–41. This statute provides, in relevant part, as follows:

(a) Notwithstanding any other provision of law, the Secretary of Defense may withhold from public disclosure any technical data with military or space application in the possession of, or under the control of, the Department of Defense, if such data may not be exported lawfully outside the United States without an approval, authorization, or license under the Export Administration Act of 1979 (50 U.S.C.App. 2401–2420) or the Arms Export Control Act (22 U.S.C. 2751 et seq.). However, technical data may not be withheld under this section if regulations promulgated under either such Act authorize the export of such data pursuant to a general, unrestricted license or exemption in such regulations. . . .

(c) In this section, the term "technical data with military or space application" means any blueprints, drawings, plans, instructions, computer software and documentation, or other technical information that can be used, or be adapted for use, to design, engineer, produce, manufacture, operate, repair, overhaul, or reproduce any military or space equipment or technology concerning such equipment.

"Section 130 is clearly an exemption 3 statute where it clearly and specifically identifies the 'particular types of matters to be withheld.'" *Colonial Trading Corp. v. Dep't of Navy,* 735 F.Supp. 429, 431 (D.D.C.1990) (quoting 5 U.S.C. § 552(b)(3)(B)). However, the EOPOTSP relies only on the DLA's unsworn memorandum that was submitted in response to the referral, which merely states that "[t]he information contained in these pa-

pers falls within FOIA exemption category 3, reason e, specifically technical data developed exclusively with Federal funds and within the meaning of [the statute]." Dana Decl., Exhibit 8. The EOPOTSP has not provided a declaration from anyone at the DLA stating that the documents were reviewed for FOIA purposes. Moreover, the EOPOTSP has not provided a description of the documents' content or averred that the documents contain "technical data with military or space application," as defined by subsection (c) of the statute, that is not otherwise authorized to be disclosed pursuant to subsection (a) of the statute. Therefore, the Court cannot determine if the slides fit within the narrow parameters of information § 130 is designed to protect and therefore exempt from disclosure under exemption 3.

*(2.) Exemption 4*

■■■ FOIA Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). To prevail on this exemption, the EOPOTSP must show that the information "is (a) commercial or financial, (b) obtained from a person [or corporation], and (c) privileged or confidential." *National Parks and Conservation Association v. Morton,* 498 F.2d 765, 766 (D.C.Cir.1974) (citations omitted); *see Allnet Communication Services v. FCC,* 800 F.Supp. 984, 988 (D.D.C.1992) (including corporations among the "wide range of entities" exemption 4 covers). Under the circumstances of this case, where it ap-

pears that the information was provided to the government voluntarily, the EOPOTSP satisfies the privileged or confidential requirement if it shows that the information "is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass Energy Project v. Nuclear Regulatory Commission,* 975 F.2d 871, 879 (D.C.Cir. 1992) (modifying *National Parks* test for determining whether information is confidential or privileged).[12]

■■■ Here, the EOPOTSP invoked exemption 4 to withhold information "relat[ing] to a meeting attended by an EOPOSTP staff member at which a Bell Communications Research, Inc. ('Bellcore') report on the potential for a widespread outage of the public switched network was presented and discussed." Dale Decl. ¶ 15. The EOPOTSP withheld "the Bellcore Report itself," as well as the meeting notice and agenda and the EOPOTSP staff member's notes of the meeting. *Id.*

Plaintiff challenges the withholding of documents in their entirety and argues that the EOPOTSP has failed to show that the "Bellcore documents" contain trade secrets or commercial or financial information. He is correct on both points. The EOPOTSP avers that the Bellcore Report "is clearly labeled on its face, on every page, as proprietary and confidential to Bellcore," Dale Decl. ¶ 16, but it has not provided any description of the report's content. *Compare with Critical Mass Energy Project,* 975 F.2d at 874 (describing withheld safety reports as,

---

12. In *National Parks,* the Court concluded that a "commercial or financial matter is 'confidential' ... if disclosure ... is likely ... either (1) to impair the Government's ability to obtain necessary information in the future; or (2)[ ] cause substantial harm to the competitive position of the person from whom the information is obtained." 498 F.2d at 770. In *Critical Mass,* the Court reaffirmed that

test but limited it to cases where the person was required to provide the information to the government. 975 F.2d at 877–79. In cases where the person voluntarily supplies information to the government, the Court adopted the "customarily" privileged or confidential test quoted above. *Id.* at 879. Here, under either test, the EOPOTSP has failed to satisfy its burden.

*inter alia,* generated from "a system for collecting, analyzing, and distributing information concerning the construction and operation of nuclear facilities ... [that] requires the solicitation of candid comments and evaluations from nuclear power plant employees."); and *Trans–Pacific Policing Agreement,* 177 F.3d. at 1026 (defendant's "affidavits ... explain precisely" potential for serious competitive harm upon disclosure of withheld information). The Court therefore has no basis upon which it can independently find that the EOPOTSP has correctly concluded that the report contains the type of information exemption 4 is intended to protect, *i.e.,* "trade secrets and commercial or financial information."

■ Even if the EOPOTSP can justify withholding the report, it is questionable whether the meeting notice and quite possibly even the agenda, which the EOPOTSP acknowledges to be "very broad[ ]," are subject to the exemption 4 protection either in whole or in part. Moreover, the EOPOTSP has not justified withholding its staff member's notes under exemption 4. As a general rule, exemption 4 does not apply to information generated by the government because such information is not "obtained from a person" within the meaning of the statute. *Allnet Communication Services,* 800 F.Supp. at 988 ("'person' refers to a wide range of entities ... other than agencies"). Exemption 4 "is intended to encourage individuals to provide certain kinds of confidential information to the Government, and it must be read narrowly in accordance with that purpose." *National Parks and Conservation Association,* 498 F.2d at 768 (citation omitted).

The EOPOTSP has not satisfied its burden of proving its application of exemptions 3 and 4. Its motion for summary judgment therefore is denied.

## C. *Department of the Treasury*

Plaintiff's claims against this agency are directed to the United States Secret Service ("USSS") and the IRS. Pending before the Court are Defendants' Partial Motion for Summary Judgment on Behalf of the Internal Revenue Service [Doc. # 68] ("IRS Mot."), Plaintiff's "Motion for Summary Judgment Against the Department of Treasury (Internal Revenue Service) With Respect to Count LV; Supporting Brief and Evidence; And, Brief in Opposition to the Defendant's Motion for Summary Judgment as to Count LV" ("Pl.'s IRS Opp."), and Plaintiff's "Motion for Summary Judgment Against the United States Treasury Department (United States Secret Service) With Respect to Count LVII; Supporting Brief and Evidence; and, Brief in Opposition to the Defendants' Motion for Summary Judgment as to Count LVII (If It Exists)."

■ As an initial matter, defendant has not filed a dispositive motion on behalf of the USSS. Plaintiff therefore argues that this omission constitutes a default with respect to his claims against the USSS. A default occurs when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend...." Fed. R Civ. P. 55(a). The agency has neither failed to plead or to defend and therefore is not in default. Arguably, the agency may have waived any defenses it may have with respect to the claims against the USSS. This is an issue, however, that the Court will not address now and that the parties may choose to raise in future motions.

By letter dated March 10, 1998, plaintiff requested from the USSS all information "that mention, relate, or pertain to myself." IRS Motion, Exhibit A1. It is undisputed that the USSS located records that were responsive and referred five of the

pages to the IRS. IRS Mot., Statement of Material Facts Not in Dispute ¶ 2. It is also undisputed that the IRS released to plaintiff portions of three pages of information by letter dated August 13, 1999. *Id.* ¶ 3. The IRS withheld other information under FOIA exemption 3 "in conjunction with 26 U.S.C. § 6103(a)." [13] *Id.*

By letter dated September 2, 1999, plaintiff requested directly from the IRS information about himself located in its criminal files. IRS Mot., Declaration of Kevin McClincy ("McClincy Decl.") ¶ 4. By letter dated April 17, 2002, during the course of this litigation, the IRS informed plaintiff that it had located 2,783 pages of records that were responsive "to his two requests," and assessed a photocopying fee of $466.40. The IRS advised plaintiff that upon payment of the fee, it would release to him 1,721 pages in their entirety and 711 pages with redactions. It also advised plaintiff that it was withholding 351 pages of information in their entirety. The IRS invoked FOIA exemptions 3, 7(C) and 7(D) as the grounds for withholding the information in whole and in part. IRS's Mot., Exhibit A4. At the time it filed its summary judgment motion, the IRS stated that "[a]s of this date, plaintiff has not remitted the assessed fees to the IRS." IRS Mot., Statement of Undisputed Facts ¶ 5.

The IRS argues that it is entitled to summary judgment on the ground that plaintiff has not paid the assessed fees and therefore has not exhausted his administrative remedies. Plaintiff counters that the fees will be paid "[b]y the time the government responds to this motion." Pl.'s IRS Opp. at 3 [page number supplied]. Plaintiff has not, however, supplemented the record with evidence that he has now actually paid the fees.

■■■ The payment or waiver of fees or an administrative appeal from the denial of a fee waiver request is a jurisdictional prerequisite to bringing suit on a FOIA claim in the district court. *See Oglesby*, 920 F.2d at 65; *accord Trueblood v. Dept. of Treasury, I.R.S.*, 943 F.Supp. 64, 68 (D.D.C.1996) (citing *Pollack v. Dep't of Justice*, 49 F.3d 115, 120 (4th Cir.), *cert. denied*, 518 U.S. 1032, 116 S.Ct. 2578, 135 L.Ed.2d 1093 (1995)). Although the IRS's fee assessment came after the filing of this lawsuit, plaintiff is obligated nonetheless to pay the fee or to seek from the agency either a fee waiver or a fee reduction. *See Trueblood*, 943 F.Supp. at 68 (the payment of fees is a jurisdictional requirement under the FOIA). The IRS processed plaintiff's FOIA request and notified him of the result. It has no further obligation until plaintiff pays the assessed fee. *See id.* at 69. Accordingly, the Court will grant the IRS's motion for summary judgment without prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court will grant plaintiff's motions to dismiss pursuant to Fed.R.Civ.P. 41, deny all of plaintiff's motions for summary judgment, and deny all of the defendants' respective motions for summary judgment, except as follows: the Court will grant the motions brought on behalf of the IRS and the USMS, and part of the motions brought on behalf of the BOP and the FBI. In addition, the Court will dismiss the FOIA

---

**13.** The IRS refers to its Exhibit A3, which is its response letter to the USSS about the referred documents. The letter authorizes the release of "the enclosed [ ] document" in its entirety. The IRS has not included the enclosed document in the court record. The Court assumes that this omission was inadvertent. The IRS is instructed to supplement the record by making this omitted document part of the record.

claims against the DEA and the PA claims against the BOP.[14]

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is

ORDERED that plaintiff's motions to dismiss pursuant to Fed.R.Civ.P. 41 [##83–1 93–1, 106–1] are GRANTED; it is further

ORDERED that the Department of State's partial motion for summary judgment [# 53–1] is DENIED as moot and the Clerk is directed to omit the Department of State as a party-defendant; it is further

ORDERED that the Department of Justice's partial motion for summary judgment on behalf of the United States Marshals Service [# 57–1] is GRANTED as conceded; it is further

ORDERED that the Bureau of Prisons' ("BOP") motion to dismiss [# 65–1] is GRANTED in part, and the claims brought under the Privacy Act, 5 U.S.C. § 552a, are DISMISSED; it is further

ORDERED that the BOP's motion for partial summary judgment [# 65–2] is GRANTED in part, and accordingly summary judgment as to the claim arising from the withholding of internal codes under FOIA exemption 2 is GRANTED. Summary judgment in all other respects on the arguments advanced by the BOP is DENIED; it is further

ORDERED that the motion for partial summary judgment brought on behalf of the Federal Bureau of Investigation ("FBI") [# 69–1] is GRANTED in part, and accordingly summary judgment as to the claim arising from the adequacy of the search for responsive records is GRANTED. Summary judgment in all other re-

spects on the arguments advanced by the FBI is DENIED; it is further

ORDERED that the motion to dismiss brought in part on behalf of the Drug Enforcement Administration ("DEA") [# 52–1] is GRANTED in part, and the claim brought under the Freedom of Information Act against the DEA is DISMISSED; it is further

ORDERED that the motion for partial summary judgment brought in part on behalf of the Executive Office for United States Attorneys ("EOUSA") [# 52–2] is DENIED; it is further

ORDERED that the motion for partial summary judgment on behalf of the Executive Office of the President's Office of Science and Technology Policy [# 70–1] is DENIED; it is further

ORDERED that the Department of Treasury's motion for partial summary judgment brought on behalf of the Internal Revenue Service [# 68–1] is GRANTED, subject to this defendant supplementing the record by submitting to the Court the enclosure referred to in its Exhibit A3; it is further

ORDERED that the Department of Treasury remains a party-defendant for purposes of addressing plaintiff's claims pertaining to the United States Secret Service; it is further

ORDERED that all other pending motions [##64, 84–92, 96–105, 107–127] are DENIED; and it is further

ORDERED that within sixty (60) days from the date of the issuance of this Order, defendants shall supplement the record by addressing the numerous flaws the Court has identified in its Memorandum Opinion, and, if appropriate thereafter, renew their motions for summary judgment, or, within the time provided, release all previously

14. A separate Order accompanies this Memorandum Opinion.

withheld records and thereafter forthwith advise the Court of its decision to do so.

SO ORDERED.