Seymour **POLLACK,** Plaintiff–Appellant,

v.

**DEPARTMENT OF JUSTICE,**
Defendant–Appellee.

No. 93–2025.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1994.

Decided March 10, 1995.

---

**ARGUED:** William Leroy Reynolds, II, Piper & Marbury, Baltimore, MD, for appellant. David Ira Salem, Asst. U.S. Atty., Greenbelt, MD, for appellee. **ON BRIEF:** Lynne A. Battaglia, U.S. Atty., Greenbelt, MD, C. Madison Brewer, Asst. Director, Information and Privacy Executive Office for the U.S. Attys., U.S. Dept. of Justice, Washington, DC, for appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MICHAEL joined. Judge MURNAGHAN wrote a concurring opinion.

## OPINION

NIEMEYER, Circuit Judge:

■ Seymour Pollack filed this action to enforce his request for documents made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.[1] The district

---

1. In his request and subsequent enforcement action, Pollack also relied on the Privacy Act, 5

court granted the United States Department of Justice's motion for summary judgment because of (1) "Pollack's failure either to pay the fees or to seek the waiver of them" and (2) Pollack's failure to exhaust administrative remedies. Even though we agree with Pollack that the government's delay in processing Pollack's request relieved him of any requirement to exhaust administrative remedies, *see* 5 U.S.C. § 552(a)(6)(C), we affirm the district court's judgment because Pollack refused to pay the required fees for search and duplicating costs or to obtain a waiver of that requirement.

## I

On September 23, 1988, Pollack mailed a request for documents under FOIA to the United States Attorney for the Eastern District of Pennsylvania. The letter requested documents "in your files that refer to me directly or indirectly." Explaining further, Pollack asked for "material involved in *United States v. Pollack, et al.,* Cr. No. 80–00757, including any and all correspondence between Mr. Rohn and any other prosecutor involved in that case with other prosecutorial offices." [2]

On November 16, 1988, Pollack amended his request and mailed it to the Executive Office for United States Attorneys at the Department of Justice. In his letter he stated that he wanted those documents described in his earlier letter, not only from the Eastern District of Pennsylvania, but also from the District of Nevada, the Middle District of Florida, the District of New Jersey, and the District of the District of Columbia, as well as "other sections of the Department of Justice: Civil Rights Division; Criminal Division; Office of Legal Counsel; Office of Deputy Attorney General; U.S. Marshal Service; etc."

When nearly a year had passed and Pollack had received no response to his request, despite repeated inquiries, he filed this action to enforce his request. And when the government did not answer his complaint within 30 days, as required by 5 U.S.C. § 552(a)(4)(C), Pollack filed a motion for summary judgment. Several months later, in March 1990, the Department of Justice responded for the first time to Pollack's request and to his motion for summary judgment. In its response to Pollack's request, the Department reported the efforts it had made and was continuing to make in searching for relevant documents. It noted that the search conducted in the Eastern District of Pennsylvania alone had yielded 12 boxes of documents. Because these boxes contained more than 2,600 pages of releasable documents, the Department noted that the duplicating costs would exceed $250, and therefore it demanded a minimum advance payment of $250, pursuant to 28 C.F.R. § 16.10(g). In its response to Pollack's motion for summary judgment, the Department noted further that Pollack's request was "650th in line for processing" at the time of receipt, and that the government was making a "good faith effort" to process Pollack's request, along with other requests "in the order in which they are received on a first-in, first-out basis, absent a demonstration of 'exceptional need or urgency' by the requester." The Department asked the court for a stay pending completion of its efforts.

Following a hearing, the district court granted the stay, requiring the Department to submit periodic status reports. *See Open America v. Watergate Special Prosecution Force,* 547 F.2d 605, 616 (D.C.Cir.1976) (additional time to process requests may be granted when agency is exercising due diligence in responding to an excessive number of requests and existing resources are inadequate

U.S.C. § 552a. Only the provisions of FOIA are relevant to this appeal, however, as Pollack's Privacy Act claim was not properly before the district court because Pollack did not first exhaust administrative remedies provided under the Privacy Act. As Pollack conceded in oral argument, the Privacy Act contains no equivalent to FOIA's "constructive exhaustion" provision which, as we point out in this opinion, enabled the district court to review his FOIA request.

2. Pollack was referring to one of several federal criminal convictions he received for his role in various conspiracies involving, *inter alia,* mail fraud, wire fraud and embezzlement. *See, e.g., United States v. Pollack,* No. 91–15646, 1992 WL 149854 (9th Cir. July 1, 1992).

to process them in a timely fashion). The court also ordered Pollack to "remit any and all copying deposits or fees required under the act on or before November 27, 1990, in order for him to receive the requested information from the government."

In a December 1990 letter to the court, Pollack expressed his view that "once an action is commenced in a Federal Court, a plaintiff does not have to 'deposit' any funds to see or obtain any of his records that he may have requested." Pollack has steadfastly maintained this legal position throughout this dispute.

In October 1992, after completing its search in every relevant office within the Department of Justice, the government filed a cross-motion for summary judgment, contending that Pollack's failure to appeal administratively the agency's actions as reported in the agency's various status reports constituted a failure to exhaust administrative remedies. The Department likewise contended that Pollack's failure to remit the necessary fees constituted a failure to exhaust administrative remedies. It argued accordingly that the court lacked subject matter jurisdiction.

In granting summary judgment in favor of the Department of Justice, the district court concluded that when a court stays further judicial proceedings and "permits the administrative process to continue, the plaintiff is obligated to keep his action alive by timely efforts to challenge any administrative determinations." The court also concluded that in order to keep his FOIA request in good standing, Pollack was required either to promise to pay the fees or to obtain a fee waiver. The court concluded, "absent a waiver of fee requirements, failure to comply with fee regulations constitutes a failure to exhaust administrative remedies ... [and] bars judicial review of his DOJ request[ ]."

This appeal followed.

II

■ To the extent that the district court relied on Pollack's failure to exhaust administrative remedies once the case was pending in the district court, we conclude that it erred. Under FOIA's statutory scheme, when an agency fails to comply in a timely fashion to a proper FOIA request, it may not insist on the exhaustion of administrative remedies, see 5 U.S.C. § 552(a)(6)(C), unless the agency responds to the request before suit is filed. *See Oglesby v. Dep't of the Army,* 920 F.2d 57 (D.C.Cir.1990).[3] Since in this case the Department of Justice did not respond to Pollack's request before suit was filed, it may not insist by reason of *Oglesby* that administrative remedies be exhausted. *See Oglesby,* 920 F.2d at 61.

■ FOIA commands that a federal agency "promptly" make records available upon a request which "reasonably describes such records and ... is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3). The agency is required to determine within 10 working days after receiving a request—unless it grants itself an extension for an additional 10 days—whether to comply with the request. *See* 5 U.S.C. § 552(a)(6)(A) & (B). While the agency need not actually fulfill the request within that period of time, it is required to notify the requester of its decision whether and how it will comply, its reasons for that decision, and the requester's right to appeal any adverse determination to the agency head. *See* 5 U.S.C. § 552(a)(6)(A)(i). Although a requester may generally seek judicial review of his FOIA request only after he has exhausted all administrative remedies, *see Spannaus v. U.S. Dep't of Justice,* 824 F.2d 52, 58 (D.C.Cir.1987), the agency's failure to respond to the initial request within the initial 10–day period (plus any 10–day extension) may constitute "constructive exhaustion." *See* 5 U.S.C. § 552(a)(6)(C); *Oglesby,* 920 F.2d at 62. Section 552(a)(6)(C) provides that "[a]ny person making a request to any

---

3. Every circuit but one which has construed § 552(a)(6)(C) has agreed with the D. C. Circuit's holding in *Oglesby,* including the court's reasoning that the option to bypass administrative remedies "lasts only up to the point that an agency actually responds." 910 F.2d at 61. *See McDonnell v. United States,* 4 F.3d 1227 (3d Cir.1993); *Taylor v. Appleton,* 30 F.3d 1365 (11th Cir.1994); *but see Voinche v. F.B.I.,* 999 F.2d 962 (5th Cir.1993).

agency for records ... *shall be deemed to have exhausted* his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." (Emphasis added). Thus, a requester who has not received a timely notice of the agency's decision, as required by 5 U.S.C. § 552(a)(6)(A)(i), may proceed immediately in court to enforce a FOIA request without exhausting any administrative remedies.

■ In this case, Pollack's request consisted of two letters filed in September and November 1988. Despite repeated inquiries from him, the Department of Justice did not respond within the 10–day time-frame required by 5 U.S.C. § 552(a)(6)(A), and approximately one year later Pollack filed this action to enforce his request. By reason of 5 U.S.C. § 552(a)(6)(C), Pollack was justified in seeking judicial enforcement without appealing to the agency head or seeking further explanation from the agency as to why his request had not been timely processed. That the request may have been burdensome to the agency or would have to be delayed because of other requests filed earlier does not allow the agency to circumvent the constructive exhaustion provision. Rather, once an agency fails to respond timely to a request, FOIA permits the requester immediately to file an enforcement suit and authorizes the district court to "retain jurisdiction and allow the agency additional time to complete its review of the records," assuming that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C).

■ The district court in this case did retain jurisdiction to allow the Department of Justice additional time to complete its search, and directed the Department thereafter to report its progress by submitting periodic status reports. But the fact that further agency activity was taking place on Pollacks's FOIA request while his enforcement action was pending in court did not require Pollack to appeal administratively each agency determination as it was described in the Department's status reports. The district court had jurisdiction over the enforcement action for the entire FOIA request and properly retained jurisdiction, and it was error for the district court to conclude that it was somehow deprived of jurisdiction because Pollack failed to file administrative appeals with the agency head during the litigation. Any such administrative exhaustion requirement was satisfied by the constructive exhaustion provision in the statute. *See* 5 U.S.C. § 552(a)(6)(C).

III

■ The constructive exhaustion provision, however, did not relieve Pollack of his statutory obligation to pay any and all fees which the agency was authorized to collect. FOIA requires the requester to follow each agency's rules for requesting, reviewing and paying for documents. *See* 5 U.S.C. § 552(a)(3)(B) (conditioning the agency's obligation to make records "promptly available" upon the requester abiding by "published rules stating the time, place, fees (if any), and procedures to be followed"). And the Act specifically requires the government to publish a uniform schedule of fees, authorizing each agency to charge a "reasonable" amount for the direct costs of document search, duplication, and review. *See* 5 U.S.C. § 552(a)(4)(A). These fees may be estimated by the agency and demanded in advance, but only if the agency determines that the fees will exceed $250 or if the requester has previously failed to pay fees in a timely fashion. *See* 5 U.S.C. § 552(a)(4)(A)(v). Each agency, however, must also establish means by which requesters can obtain reduced rates or fee waivers if they can show that their information request will serve the public interest and not primarily the commercial interest of the requester. *See* 5 U.S.C. § 552(a)(4)(A)(iii). The Department of Justice's regulations detailing its FOIA procedures and requirements are set forth at 28 C.F.R. §§ 16.1— 16.11, and these regulations have not been challenged in this case.

Pollack contends that once he commenced an action in court to enforce his FOIA request, he was relieved of any obligation to pay for documents. Yet he provides no statutory provision, regulation, or case which supports this proposition. Nowhere in the

statute or in the Department of Justice's regulations can we find a provision which states that when an agency acts untimely, it is obliged to provide the requester with unlimited documentation free of charge. On the contrary, fees are mandated in all but limited circumstances, *see* 28 C.F.R. § 16.10(a), and payment may even be required *in advance* as a condition of further agency attention to the request. If an office within the Department of Justice estimates that the fees for a given request will be higher than $25, the office must notify the requester of the estimated amount and *need not proceed any further* with the request unless the requester agrees to pay the anticipated fee. *See* 28 C.F.R. § 16.10(e). And if, as in this case, an office estimates that the fee will likely exceed $250, it may ask the requester to make "an advance payment of an amount up to the entire estimated fee *before beginning to process the request,*" except where a requester "with a history of prompt payment" provides satisfactory assurance that the fee will be paid. 28 C.F.R. § 16.10(g)(1) (emphasis added). Finally, when a requester "has previously failed to pay a records access fee within 30 days of the date of billing," the agency *may refuse to continue processing the pending request* and refuse to accept any new request from that requester, until the requester makes advance payment of any fees owed plus interest. 28 C.F.R. § 16.10(g)(2).

In this case, the Department of Justice's first communication to Pollack noted that fees for his request would likely exceed $250 and therefore it requested an advance payment of $250. *See* 28 C.F.R. § 16.10(g)(1). Pollack did not make the advance payment, did not promise to do so, and in fact explicitly said that he had no plans ever to pay such fees. From that point on, all offices within the Department of Justice had the authority to cease processing Pollack's request. *See* 28 C.F.R. § 16.10(g)(2). Instead, the Department continued processing Pollack's request and successfully petitioned the district court for an order directing Pollack to pay the required fees. When the Department had completed its efforts and Pollack still refused to pay, the Department filed a motion for summary judgment based in part on Pollack's failure to pay the required fees, and the court granted the motion.

We note that if Pollack wished to avoid payment, he had several options at his disposal, none of which he pursued. Department of Justice regulations provide that a requester be given an opportunity to reformulate his request, with the agency's assistance, to meet his information needs at a lower cost. *See* 28 C.F.R. § 16.10(e). Pollack never attempted such a reformulation. Indeed, he ignored at least one U.S. Attorney's Office's request for his assistance in narrowing the search to documents which Pollack did not already possess. Further, Pollack could have applied to the Department for reduced fees or even a fee waiver. Department of Justice regulations provide for such arrangements when requests or segments of requests are "likely to contribute significantly to public understanding of ... government and [are] not primarily in the commercial interest of the requester." 28 C.F.R. § 16.10(d)(1); *see also* 5 U.S.C. § 552(a)(4)(A)(iii). We make no judgment as to whether Pollack's request in this case might qualify under this standard; we only note that Pollack made no effort to pursue this option.

While the Freedom of Information Act is a meaningful tool to provide public access to government, such access "must be orderly and not so unconstrained as to disrupt the government's daily business." *See Ethyl Corp. v. EPA,* 25 F.3d 1241, 1245 (4th Cir. 1994). Pollack's effort to procure hundreds or perhaps thousands of documents apparently without any intent of paying for the cost of recovering and duplicating the documents strikes close to the disruption of which we spoke in *Ethyl.* If Pollack wishes to revive his request or file a new request, he may be able to do so, but only in accordance with the requirements of FOIA and the applicable regulations.

For the reasons given, the judgment of the district court is

*AFFIRMED.*

MURNAGHAN, Circuit Judge, concurring:

I concur that Pollack had constructively exhausted his administrative appeals and so prevailed on that point, as indeed he should, given the extreme dilatoriness with which the Department of Justice responded to his requests. Taking over a year is not acting promptly.

Yet, I also concur that Pollack's refusal to arrange for satisfaction of his fee obligations has led to a victory for the Department. It is not one to be proud of. Pollack's requests were well within his rights under FOIA, and the Department's failure to acknowledge, never mind respond, to them promptly, met neither the letter nor the spirit of the statute.

Still Pollack was required to pay the fees. His annoyance at the treatment (or more accurately the non-treatment) his case was receiving from the Department of Justice is understandable but "two wrongs don't make a right."