NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| AIDAN MONAGHAN, | No. 11-16214 |
| Plaintiff-Appellant, | D.C. No. 2:09-cv-02199-JCM-GWF |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF JUSTICE, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted November 9, 2012
San Francisco, California

Before: BERZON and KLEINFELD, Circuit Judges, and SMITH, District Judge.[**]

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable William E. Smith, District Judge for the U.S. District Court for the District of Rhode Island, sitting by designation.

Plaintiff-Appellant Aidan Monaghan appeals the district court's denial of his motion for summary judgment for a Freedom of Information Act ("FOIA") fee waiver and the district court's granting of Defendant-Appellant Federal Bureau of Investigation's ("FBI") motion to dismiss. We review both issues *de novo*, with review of the fee waiver decision limited to the administrative record before the agency. *See* 5 U.S.C. § 552(a)(4)(A)(vii); *Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003); *Friends of the Coast Fork v. United States Dep't of the Interior*, 110 F.3d 53, 54 (9th Cir. 1997). For the reasons that follow, the district court order of dismissal is affirmed.

A.    The Record

As an initial matter, Monaghan incorrectly argues that the FBI's untimely January 13, 2010 response letter is a "*post hoc* response" that should be stricken from the administrative record. An administrative record includes "the initial FOIA request, *the agency's response*, and any subsequent materials related to the administrative appeal." *Forest Guardians v. United States Dep't of the Interior*, 416 F.3d 1173, 1177 (10th Cir. 2005) (emphasis added). As many cases demonstrate, the fact that an agency's response was untimely does not preclude inclusion of that response in the administrative record for consideration by the courts. *See Pollack v. United States Dep't of Justice*, 49 F.3d 115, 117, 120 (4th Cir. 1995); *Jeanes v. United*

2

*States Dep't of Justice*, 357 F. Supp. 2d 119, 121, 123 (D.D.C. 2004); *Maydak v. United States Dep't of Justice*, 254 F. Supp. 2d 23, 50 (D.D.C. 2003). The reason for this is simple: a court's function is to review the decision made by the agency and not to relitigate the facts or to create a new record on appeal. *See Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). Here, the FBI's untimely response was not an attempt to manipulate the record on judicial review. To the contrary, with the exception of timeliness, the response appears to be the FBI's attempt to comply with FOIA: it explained the FBI's determination that the waiver was unwarranted, provided detailed reasons for that determination, informed Monaghan of his right to appeal, notified Monaghan of the unusual circumstances affecting the amount of time it would take to disclose the documents, informed Monaghan of the accrued costs of the search, requested advanced payment of these high costs, and was written by the section chief of the Record/Information Dissemination Section, not by an attorney from the legal team defending the lawsuit. *See* 5 U.S.C. §§ 552(a)(4)(A)(iii), (a)(6)(A)(i), (a)(6)(B)(i)-(ii); 28 C.F.R. § 16.11(c)(2). Thus, it was not an improper *post hoc* response, and the district court properly considered it.

B.  Fee Waiver Under 5 U.S.C. § 552(a)(4)(A)(iii) & 28 C.F.R. § 16.11(k)

Both the FBI and the district court correctly concluded that the administrative record does not support a fee waiver for Monaghan's FOIA request.  While fee waiver requests are to be liberally construed, the burden is on the requester to satisfy FOIA's statutory requirements and the Department of Justice's regulatory standards. Monaghan fails to meet his burden because he has provided only conclusory allegations.  *See Forest Guardians*, 416 F.3d at 1177- 78 (quoting *Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003)).  For example, Monaghan states that because "the FBI investigation of the terrorist attacks of September 11, 2001 is the largest ever undertaken by the bureau," the "[r]elease of the requested records will contribute greatly to the public understanding of government operation," but he does not explain why.  It is unclear how documents that address "broad public skepticism" and "public doubts" regarding the crashes of American Airlines flight 77 and United Airlines flight 93 are "meaningfully informative" on governmental operations or activities, and it is not the FBI's responsibility to infer a connection.  *See* 28 C.F.R. § 16.11(k)(2)(ii); *Jarvik v. Cent. Intelligence Agency*, 495 F. Supp. 2d 67, 72-73 (D.D.C. 2007).

4

Monaghan also fails to show how disclosure will contribute to public understanding because he does not establish either an ability or intention to *effectively* convey information to a broad public audience. *See* 28 C.F.R. § 16.11(k)(2)(iii). The FBI explains in its response that Monaghan's sub-blog is not easily accessible through general searches conducted on common search engines. Monaghan does not dispute this, nor does he provide any information regarding the website traffic or number of hits that either his sub-blog or the 911blogger.com website attract. Given these uncertainties, Monaghan fails to establish that any information put on his sub-blog will reach the public and contribute to a "public understanding" of government activities. The references to the *Beacon-News*, "Loose Change 9/11: An American Coup," and "The New Pearl Harbor Revisited: 9/11, the Cover-Up, and the Exposé" are likewise inadequate. The record is completely silent (absent Monaghan's bare assertions) as to what information these publications reported and whether Monaghan received any credit for supplying the information. The only way to verify these claims would be to read the news reports, listen to the documentary programs, and buy and read the book. It is not the FBI's responsibility to go on a scavenger hunt.

Finally, the FBI's response letter observes that portions of the responsive documents have previously been released to the public. Monaghan does not challenge this position, and the documents' prior availability makes them unlikely to further

5

contribute to public understanding of government operations. *See* 28 C.F.R. § 16.11(k)(2)(ii).

C.    Fee Preclusion

Monaghan's final attempt to avoid paying fees - an argument predicated on FOIA's fee preclusion subsection - is likewise unavailing. When he filed his lawsuit, Monaghan knew the FBI had failed to comply with FOIA's time requirements. Indeed, it was a prerequisite for the lawsuit. Yet, his Amended Complaint, which contains a section entitled "waiver of search and reproduction fees," is entirely silent on fee preclusion. Moreover, when Monaghan filed his summary judgment motion on April 22, 2010, it had been three months since the FBI's response letter requesting that Monaghan pay $864 in accrued search fees. Because the parties had agreed to resolve all fee issues during the first part of the bifurcated trial, and the FBI's response put Monaghan on notice of his obligation to pay, any fee preclusion arguments should have been raised at summary judgment; no such arguments were raised. When Monaghan did finally decide to raise the issue - in response to the FBI's motion to dismiss - he was too late; the time for raising the issue had already passed, and thus Monaghan waived the fee preclusion argument. *See Dettmann v. United States Dep't of Justice*, 802 F.2d 1472, 1476 (D.C. Cir. 1986).

D.    Failure to Pay FOIA Fees

Monaghan's argument that the district court erred in dismissing the case because he constructively exhausted his administrative remedies misunderstands FOIA's exhaustion requirement. It is undisputed that when the FBI failed to respond to Monaghan's initial August request and his September 29 appeal letter, Monaghan constructively exhausted his administrative remedies regarding decisions on his FOIA request and fee waiver, and he properly filed suit in the district court. "The constructive exhaustion provision, however, did not relieve [defendant] of his statutory obligation to pay any and all fees which the agency was authorized to collect." *Pollack*, 49 F.3d at 119; *see also Dettmann*, 802 F.2d at 1477 ("[A] plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request . . . and yet not have exhausted her remedies with respect to another aspect of a FOIA request."). Once the district court denied Monaghan's motion for summary judgment, Monaghan became obligated to pay the fees related to his request, regardless of the FBI's untimeliness. *See Pollack*, 49 F.3d at 119-20; *Kurdyukov v. Drug Enforcement Admin.*, 578 F. Supp. 2d 61, 65 (D.D.C. 2008). Because he failed to do so, the FBI has not "(1) 'improperly' (2) 'withheld' (3) 'agency records'" and the district court properly dismissed Monaghan's claim. *See United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).

7

**AFFIRMED.**

Monaghan v. Federal Bureau of Investigation, 11-16214

BERZON, Circuit Judge, dissenting:

I respectfully dissent.

First, the preclusion issue under 5 U.S.C. § 552(a)(4)(A)(viii) was not waived. The statute's fee preclusion provision is more limited than the broader waiver Monaghan originally sought when he moved for summary judgment, as it does not necessarily cover duplication costs. *Compare* § 552(a)(4)(A)(viii) *with* § 552(a)(4)(A)(iii). The preclusion argument was raised in response to the motion to dismiss, which was an appropriate time to raise it, as it was a defense to the Federal Bureau of Investigation's ("FBI's") assertion that Monaghan had failed to exhaust by paying all the fees demanded—namely, the $864 in fees accrued as of January 2010.

The preclusion provision is directly applicable, as the FBI did not make a determination on Monaghan's request, received on August 31, 2009, within twenty days, or notify Monaghan of an extension of that statutory deadline, as required under § 552(a)(6)(A)(i).

Moreover, as I read the "unusual circumstances" exception to the fee preclusion provision, it does not absolve the FBI of the obligation to inform FOIA requesters that the agency cannot comply with the application deadline because of

-1-

unusual circumstances. *See* § 552(a)(4)(A)(viii), (6)(B)–(C). As no such notice was provided, the unusual circumstances exception does not apply.

Second, I also would hold that the record supports a public interest fee waiver, under § 552(a)(4)(A)(iii), for Monaghan's FOIA request. Unlike the majority, I do not find "unclear" the assertion that release of FBI records concerning the investigation of the 9/11 crashes could prove informative for the public concerning government operations. That assertion seems self-evidently true. Nor do I see the relevance of the precise location of Monaghan's blog on the internet; it is accessible, even if not "easily," to those interested in 9/11 issues, and Monaghan did, in the blog entries that were included in the stipulated administrative record, include substantive information regarding the 9/11 attacks, as well as accounts of his attempts to acquire more information.

For the foregoing reasons, I would reverse the district court's grant of the FBI's motion to dismiss and remand for further proceedings.