PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN J. COLEMAN,

      *Plaintiff-Appellant,*

v.

DRUG ENFORCEMENT
ADMINISTRATION,

      *Defendant-Appellee.*

No. 11-1999

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:10-cv-00927-GBL-IDD)

Argued: March 19, 2013

Decided: May 2, 2013

Before TRAXLER, Chief Judge, and WILKINSON and
NIEMEYER, Circuit Judges.

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Traxler and Judge Niemeyer joined.

## COUNSEL

**ARGUED:** Daniel J. Stotter, STOTTER & ASSOCIATES LLC, Corvallis, Oregon, for Appellant. David Moskowitz,

OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. MacBride, United States Attorney, Yiris Cornwall, Julie Edelstein, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

## OPINION

WILKINSON, Circuit Judge:

In February 2008, appellant John Coleman filed a Freedom of Information Act ("FOIA") request with appellee Drug Enforcement Administration ("DEA") for documents concerning the federal government's regulation of the drug carisoprodol. Despite a statutory mandate requiring agencies to respond to FOIA requests and appeals within twenty working days, the DEA took more than sixteen months to respond to Coleman's request, eventually denying it for failure to prepay the assessed processing fee. The Department of Justice's Office of Information Policy ("OIP") then took over seven months to act on Coleman's appeal of the DEA's fee determination, ultimately remanding the request back to the DEA for reconsideration. Coleman waited almost five more months for subsequent DEA action. Finally, after nearly two and a half years of pursuing his request through the administrative process to no avail, Coleman filed this action against the DEA seeking production of the documents he originally requested.

Having exhausted the litigant, the DEA proceeded to argue that it was Coleman who had failed to pay its fee request for a preliminary search of documents and to exhaust his administrative remedies. The district court agreed and granted summary judgment to the DEA. We reverse. Because the DEA violated its statutory deadline for responding to Coleman, we hold that he has exhausted his administrative remedies in this matter and remand the case for further proceedings consistent with this opinion.

## I.

Congress passed the Freedom of Information Act, 5 U.S.C. § 552, in 1966 "to establish a general philosophy of full agency disclosure," S. Rep. No. 89-813, at 3 (1965), and "to assure the availability of Government information necessary to an informed electorate," H.R. Rep. No. 89-1497, at 12 (1966). The statute provides that, subject to certain enumerated exemptions for classified documents, agency personnel and medical files, confidential financial information, and the like, 5 U.S.C. § 552(b)(1)-(9), federal agencies generally must make their internal records available to the public upon request, *id.* § 552(a)(3)(A). As the Supreme Court has recognized, FOIA's disclosure regime shines a light on government operations "to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

Upon receipt of a request for records, an agency has twenty working days to "determine . . . whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i). The twenty-day period may be extended in "unusual circumstances," to wit, if the agency must (1) "search for and collect the requested records from field facilities"; (2) "search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request"; or (3) "consult[ ] . . . with another agency having a substantial interest in the determination of the request." *Id.* § 552(a)(6)(B). If an agency seeks to invoke the "unusual circumstances" extension, it must send "written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i). No extension for "unusual circumstances" is permissible without written notice to the requester. If an agency seeks to extend the deadline by more than ten working days, it must "provide the person an oppor-

tunity to limit the scope of the request so that it may be processed" more quickly. *Id.* § 552(a)(6)(b)(ii). At the time Coleman filed his request, there was no other relevant mechanism for an agency to toll the twenty-day time limit.

To offset the cost of fulfilling document requests, FOIA authorizes agencies to collect processing fees. *Id.* § 552(a)(4). There are three basic types of fees: "search" fees to cover the cost of agency personnel time spent locating the requested documents, "review" fees to cover the cost of personnel time spent determining whether any requested documents are exempt from disclosure, and "duplication" fees to cover the cost of actual duplication as well as any personnel time spent in the duplication process. 28 C.F.R. § 16.11(b), (c). When records are "requested for commercial use," an agency may, in accord with its own regulations, assess search, review, and duplication fees. 5 U.S.C. § 552(a)(4)(A)(ii)(I). When records are "not sought for commercial use and the request is made by an educational or noncommercial scientific institution . . . or a representative of the news media," the agency may collect only duplication fees, not search or review fees. *Id.* § 552(a)(4)(A)(ii)(II). Any other requests for noncommercial use are subject to both search and duplication fees, but not review fees. *Id.* § 552(a)(4)(A)(ii)(III).

Notwithstanding the foregoing fee assessment criteria, FOIA requests must be processed "without any charge or at a charge reduced below" the agency's established fee schedule "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii). If no fee waiver applies, an agency may require prepayment before beginning to process a request if "the agency has determined that the fee will exceed $250." *Id.* § 552(a)(4)(A)(v). If the requester refuses to prepay these fees, "the request shall not be considered received and further

work will not be done on it until the required payment is received." 28 C.F.R. § 16.11(i)(4).

If a requester is not satisfied with an agency's response to a request, either because the requester disagrees with the fee assessment or the agency has refused to provide all requested documents that the requester believes are subject to disclosure under FOIA, the requester may file an administrative appeal. *Id.* § 552(a)(6)(A)(i). Pursuant to federal regulations, the OIP handles all appeals from DOJ component organizations, including the DEA. 28 C.F.R. § 16.9(a). FOIA requesters have 60 days from the date of the DEA's adverse decision to appeal to the OIP. *Id.* By congressional mandate, the OIP has twenty working days after receipt of the appeal to "make a determination" on it. 5 U.S.C. § 552(a)(6)(A)(ii).

If a requester is not satisfied with the outcome of an administrative appeal, the requester may seek judicial review of any adverse decision. On complaint by the requester, the district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). Before commencing litigation, a requester must ordinarily exhaust administrative remedies by appealing an issue through the FOIA administrative process following an initial adverse determination by the agency. *E.g.*, *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam); *see also* 28 C.F.R. § 16.9(c). However, a requester "shall be deemed to have exhausted his administrative remedies" and may commence litigation immediately if "the agency fails to comply with the applicable time limit provisions" of the FOIA statute, 5 U.S.C. § 552(a)(6)(C)(i), so long as the agency has not cured its violation by responding before the requester files suit, *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995). This constructive exhaustion provision allows a requester to break out of the administrative process and proceed directly to federal court in the face of an unresponsive agency. If, during litigation, "the Government can show

exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i).[1]

## II.

The trek through the above administrative process began on February 29, 2008, when Coleman, a researcher and author, sent a FOIA request to the DEA seeking documents "regarding the scheduling of carisoprodol (trade name Soma(r)) pursuant to the Controlled Substances Act." J.A. 31. Coleman offered to "reimburse the federal government all appropriate costs in connection with the search and reproduction of the requested records up to the sum of $1,000.00." *Id.*

The DEA received the request several days later on March 4, 2008. Pursuant to FOIA, the agency had twenty working days to determine whether to comply with the request and notify Coleman of that determination. *See* 5 U.S.C. § 552(a)(6)(A)(i). The twenty-day period expired on April 1, 2008, and no response or notice of unusual circumstances was sent to Coleman by that date, placing the DEA in violation of FOIA's time-limit provisions.

On July 14, 2009—one year, four months, and ten days after receiving Coleman's request—the DEA denied the request on the grounds that the "promise to pay fees of

---

[1]In December 2007, Congress amended FOIA to provide that if an agency needs additional information in order to fulfill a request or determine the requisite processing fee, the agency may contact the requester and toll the twenty-day response period while awaiting a reply. OPEN Government Act of 2007, Pub. L. 110-175, § 6(a)(1), 121 Stat. 2524, 2526 (2007) (codified at 5 U.S.C. § 552(a)(6)(A)). However, these provisions did not take effect until December 31, 2008, *id.* § 6(a)(2), and are thus not applicable to the request at issue here, which was filed on February 29, 2008. In any case, the DEA never contacted Coleman within the twenty-day period to request additional information.

$1,000.00 is insufficient to cover the cost of the search, review and duplication." J.A. 33. The DEA stated that, as a commercial requester, Coleman was responsible for search, review, and duplication fees and, based on the initial request, the cost of only the preliminary phase of the search was estimated at $1,780.75. The agency advised that it could not begin processing the request until Coleman submitted an advance payment of $1,640.00, which would cover most of the agency's estimate for the cost of the search.

Approximately two weeks later, on July 31, 2009, Coleman appealed the fee assessment to the OIP. In his appeal, he asserted that he was "*not* a commercial requester" but rather "a researcher and an author who, in the past, has published medical and scientific articles in professional journals and books for which [he] neither sought nor received remuneration." J.A. 37. He indicated that he was "seeking this information as a non-commercial requester" and stated his intent "to use the requested information as part of [his] research for a book, journal article, or news report." *Id.* Coleman further stated that he was, in fact, "eligible to request a fee waiver" because (1) he was a "freelance journalist" and (2) disclosure of the information he sought "is likely to contribute significantly to the public's understanding of the operations of the government with respect to how it enforces provisions of the Controlled Substances Act." J.A. 38. Notwithstanding his initial promise to pay, Coleman formally requested a fee waiver in light of the DEA's "excessive delay in unlawfully denying [him] access to the requested information." J.A. 37.

The OIP received the appeal on August 18, 2009. Pursuant to FOIA, the OIP had twenty working days to act on it. *See* 5 U.S.C. § 552(a)(6)(A)(ii). The twenty-day period lapsed on September 16, 2009. No decision on the appeal was communicated to Coleman by that date, placing the OIP, like the DEA, in violation of the statutory time limit.

On March 29, 2010—seven months and eleven days after receiving Coleman's appeal—the OIP notified Coleman that

the DEA's action on his initial request "was not consistent" with the DEA's own regulations concerning fee assessment. J.A. 40 (citing 28 C.F.R. § 16.11(b)(1) (defining "commercial use request"); *id.* § 16.11(e)). Without mandating a particular final disposition, the OIP remanded the request to the DEA for "reprocessing, including further consideration of [Coleman's] fee category." J.A. 40. While FOIA itself does not explicitly contemplate remands following administrative appeals, DOJ regulations provide that a remanded request "will be reprocessed in accordance with [the OIP] appeal decision." 28 C.F.R. § 16.9(b). The OIP's decision letter did not indicate that Coleman had to take any additional action to have his request reprocessed.

On April 22, 2010, Coleman resubmitted his FOIA request directly to the DEA. He reiterated that he was not a commercial requester and proposed a settlement that "*all* fees for search and duplication ('review' cost is no longer applicable)" be waived, arguing in support of the proposal that he was "a published author of academic and technical materials." J.A. 43. He also reasserted that "disclosure of the information [sought in the request] is in the public interest because it is likely to contribute significantly to the public's understanding of the operations of the government with respect to how it enforces provisions of the Controlled Substances Act." J.A. 44.

After waiting approximately four more months for a response from the DEA, Coleman commenced the instant lawsuit *pro se* in the Eastern District of Virginia. He recounted the history of his FOIA request—going back nearly two-and-a-half years from the date he filed the complaint—and sought judicial relief in the form of an order directing the DEA "to provide immediate and full access to the requested documents" with all fees waived "in view of excessive and unlawful delay." J.A. 8-9.

On September 29, 2010, just before filing an answer in this litigation, the DEA took action on Coleman's request, which

was still pending after the OIP remand six months earlier. The DEA maintained its position that Coleman was a "commercial requester" because he was affiliated with a for-profit firm that offered consulting services to pharmaceutical companies seeking government approval of their new drugs. The agency also pointed to one of Coleman's publications in which he disclosed a "financial relationship with several drug manufacturers." J.A. 47. Finding that Coleman had a commercial interest in the documents he sought, the DEA declined to grant him either noncommercial fee status or a fee waiver. It then rejected the FOIA request on the grounds that the search fee alone would exhaust Coleman's $1,000.00 commitment many times over. The day after the DEA sent this letter, it filed an answer and pointed to the reasoning in the letter as justification for denying Coleman's request.

Even as this litigation was pending, the parties continued their discussions in the administrative process. On November 22, 2010, three months after Coleman filed his complaint, the DEA sent additional correspondence "in further response to" his request. J.A. 53. The agency reiterated its position that Coleman was a commercial requester based on his involvement in pharmaceutical consulting and his past FOIA requests, at least some of which were deemed commercial without dispute. And once again, the agency denied the request at issue here, arguing that the processing fees would far exceed $1,000.00 regardless of whether Coleman were deemed a commercial or noncommercial requester. The parties reached an impasse following Coleman's final administrative correspondence, dated December 6, 2010, in which he again explained his belief that he was entitled to both noncommercial fee status as well as a public interest fee waiver. The DEA moved for summary judgment shortly thereafter.

The district court granted summary judgment in favor of the DEA in March 2011, concluding that Coleman both failed to exhaust his administrative remedies and failed to pay the fee necessary to begin processing his request. With respect to

the exhaustion issue, the court found that Coleman "only recently demanded a waiver of all fees associated with his FOIA request in his December 6, 2010 letter" and had not yet appealed the denial of the waiver to the OIP. J.A. 97. The district court also found that Coleman "refused to pay" the DEA's assessed processing fee before filing suit, providing a second, independent grounds for summary judgment in favor of the agency. J.A. 95-96. Coleman unsuccessfully moved the district court to alter or amend its judgment, and this appeal followed.

### III.

We shall first address whether Coleman exhausted his administrative remedies prior to filing the instant suit. As a general matter, the concept of administrative exhaustion makes good sense. It is far better for the requester and the agency to reach a mutually satisfactory resolution on their own without the need for federal judicial intervention. The requirement that administrative remedies be exhausted saves both agency and judicial resources and affords the requester hope that a timely response to the request will be forthcoming. Congress recognized, however, that agencies may be prone to resist the release of records, either because they believe in good faith that production of the requested documents is not required or because they wish to spare themselves inconvenience or embarrassment. Without the prospect of judicial intervention, therefore, the right of citizens to examine the basic workings of their government would be severely compromised. This is an especially troubling prospect at a time when the reach of government makes accountability important and the sheer size of government can render its operations all but impenetrable.

Unfortunately this particular suit illustrates the frustration of congressional hopes and the confirmation of congressional fears. Given the extended and inexcusable agency delay Coleman faced while pursuing his FOIA request, we conclude that

he constructively exhausted his administrative remedies before commencing this litigation.

### A.

A requester must ordinarily appeal the denial of a FOIA request within the administrative process before proceeding to federal court. *E.g.*, *Wilbur*, 355 F.3d at 676; *see also* 28 C.F.R. § 16.9(c). However, to prevent agencies from keeping requesters out of court by simply delaying the administrative process *ad infinitum*, Congress provided that a requester will be deemed to have exhausted his or her administrative remedies "if the agency fails to comply with the applicable time limit provisions" laid out in FOIA. 5 U.S.C. § 552(a)(6)(C)(i). Put simply, if an agency does not respond to a request within twenty working days after receiving it, the requester may typically commence litigation. *Citizens for Responsibility & Ethics in Wash. v. FEC*, ___ F.3d ___, 2013 WL 1296289, at *1 (D.C. Cir. 2013). This court has flatly stated that even if a request "may have been burdensome to the agency or would have to be delayed because of other requests filed earlier," the constructive exhaustion provision still applies. *Pollack*, 49 F.3d at 119. Here, the DEA's inaction on remand triggered constructive exhaustion of Coleman's administrative remedies and allowed him to proceed directly to court.

It is beyond question that both the DEA and the OIP failed to comply with the applicable time limits that governed Coleman's initial request and appeal. *See* 5 U.S.C. § 552(a)(6)(A). Coleman first submitted his request on February 29, 2008, and the DEA did not act on it for one year, four months, and ten days following receipt—exceeding FOIA's twenty-day time limit many times over. Coleman appealed the decision on July 31, 2009, and the OIP did not act on it for seven months and eleven days following receipt—also exceeding FOIA's twenty-day time limit many times over. After each agency exceeded its statutory deadline, Coleman was free to seek judicial relief. *See, e.g.*, *id.* § 552(a)(6)(C)(i); *Citizens for*

*Responsibility*, 2013 WL 1296289, at *1. However, before this litigation began, the DEA eventually did respond to Coleman's initial request, and the OIP eventually did act on his appeal, thereby precluding him from relying on constructive exhaustion with respect to those submissions. *See Pollack*, 49 F.3d at 118; *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 63 (D.C. Cir. 1990).

Notwithstanding these prior responses, when Coleman commenced the instant litigation, he had been waiting for a decision from the DEA on remand for nearly five months. Although FOIA does not explicitly contemplate remands following administrative appeals, it is inconceivable that Congress intended to allow agencies to escape FOIA's time limits by sitting on remanded requests indefinitely. In setting a time limit for agencies to respond to initial requests and establishing constructive exhaustion as a means to enforce that limit, Congress expressed a clear intent to ensure that FOIA requests receive prompt attention from the applicable agencies. A request upon remand is still a request, and we therefore conclude that it, too, must be acted upon within twenty working days, pursuant to 5 U.S.C § 552(a)(6)(A)(i).

Whether the clock began ticking on the date the DEA received the remand from the OIP or a few weeks later when the agency received Coleman's resubmitted request, the DEA triggered a third FOIA violation by once again failing to provide Coleman with a timely response. The DEA did not cure this violation because it did not respond before Coleman filed the operative complaint here. It is true that the DEA responded to Coleman's request on remand before the agency filed its answer but after Coleman filed his complaint. However, constructive exhaustion applies if an agency has exceeded its statutory deadline, "unless the agency responds to the request *before suit is filed*." *Pollack*, 49 F.3d at 118 (emphasis added). That the agency responded after the suit began is thus of no moment. We therefore conclude that Cole-

man has constructively exhausted his administrative remedies with respect to the claims made in his request upon remand.

B.

The DEA argues, however, that Coleman cannot rely on constructive exhaustion here because, first, the agency responded to Coleman's initial request before he filed this lawsuit, DEA Br. at 29, and second, even if Coleman constructively exhausted the claim that he was a noncommercial requester, he did not exhaust the fee waiver claim because he did not request a waiver until after this litigation had already begun, *id.* at 30-32. We find both of these objections to be without merit.

1.

The DEA asserts that once an agency responds to a request, "constructive exhaustion is inapplicable and actual exhaustion of administrative remedies is required," regardless of the agency's subsequent actions (or lack thereof). *Id.* at 29. But that position does not square with the text of the statute.

FOIA's constructive exhaustion provision applies if an agency "fails to comply with the applicable time limit provi*sions*" of the statute. 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added). FOIA imposes *two* distinct time limits relevant here: one for responding to requests, *id.* § 552(a)(6)(A)(i), and one for responding to appeals, *id.* § 552(a)(6)(A)(ii). If an agency timely responds to an initial request but fails to make a timely determination with respect to the appeal of that request, it has violated one of the two "applicable time limit provisions," and constructive exhaustion can apply. Contrary to the DEA's position, the mere fact that an agency has responded to the initial request does not make constructive exhaustion "inapplicable" given that subsequent agency inaction following the initial response may mean that the agency has "fail[ed] to comply with the applicable time limit provisions."

Accordingly, an agency is not immune from the twenty-day limit simply because it has already rejected a request once and has been forced to reconsider it on remand. The DEA's failure to reprocess Coleman's renewed request on remand in anything like a timely fashion violated the statutory time limit and thus triggered constructive exhaustion, notwithstanding the fact that the agency had already responded to the initial request more than a year earlier. The irony of the DEA's position is especially apparent here, where it contends that its belated and dilatory initial response gives it a free pass for all time.

2.

The DEA next contends that, even if Coleman exhausted his claim that he was a noncommercial requester, he did not exhaust his fee-waiver claim because he did not request a waiver until after this litigation had commenced. While the DEA may be correct that a plaintiff can exhaust administrative remedies with respect to one issue in a FOIA dispute but not another, *see Dettmann v. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986), to conclude, as the district court did, that Coleman exhausted his remedies only with respect to the commercial/noncommercial distinction and not with respect to the fee waiver question both chops this case too finely and overlooks the substance of Coleman's administrative correspondence.

Despite the DEA's quibbles about exactly what Coleman requested from the agency and when he did so, the administrative claims he raised regarding his eligibility for noncommercial fee status and his eligibility for a fee waiver all address the same core question, namely how Coleman's request should be treated under FOIA's fee assessment scheme. The DEA would create a rule under which a FOIA requester must make distinct arguments addressing every individual component of an adverse fee determination before obtaining judicial review of that determination. However,

holding an ordinary citizen seeking to learn about the basic workings of a federal agency to such an exacting standard would impose a burden not authorized by FOIA and would frustrate the statute's purpose of "assur[ing] the availability of Government information necessary to an informed electorate." H.R. Rep. No. 89-1497, at 12. While a FOIA requester cannot exhaust his administrative remedies with respect to an issue if "not a word was said" about it, *Dettmann*, 802 F.2d at 1476, a requester need not provide the agency with every nuance and detail of a particular claim before exhaustion can be found.

Even were we to require a FOIA requester to explicitly challenge each and every component of an allegedly erroneous fee assessment, Coleman would still prevail because he did, in fact, address both his noncommercial fee status and his fee waiver eligibility. On July 31, 2009, Coleman sought OIP review of what he described as (1) his "misidentification . . . by DEA as a 'commercial requester'" and (2) "DEA's erroneous fee estimate used, in effect, to deny [his FOIA] request." J.A. 37. He asked "that fees that otherwise might be required to fulfill [his] request be waived in full because of the stated errors and excessive delay in unlawfully denying [him] access to the requested information." *Id.* Moreover, Coleman indicated that he was "eligible to request a fee waiver, either by asserting that disclosure was in the public interest or that [he] was entitled to a waiver in [his] capacity as a 'freelance journalist.'" J.A. 38. These statements were before the DEA on remand because the agency received Coleman's OIP appeal with the OIP's remand decision.

Out of an abundance of caution, Coleman resubmitted his request to the DEA following the remand, even though there was no indication from the OIP that he needed to do so. In his resubmission, he again indicated that he was a noncommercial requester *and* was eligible for a fee waiver by virtue of his status as "a published author of academic and technical mate-

rials." J.A. 43. To support his assertions, he included a list of nine published articles that he previously authored.

To be sure, requests for fee waivers must be made with "reasonable specificity." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003). The burden to request a fee waiver is on the requester and the requester must make a prima facie showing before the agency is obligated to consider the request. *See Nat'l Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C. Cir. 1987); 28 C.F.R. § 16.11(k)(5). We find that Coleman met these requirements here.

Notwithstanding the DEA's arguments to the contrary, Coleman made a claim for a fee waiver, albeit imperfectly, to the agency twice: once indirectly, in his OIP appeal that was sent to the DEA on remand, and once directly, in his formal resubmission of his FOIA request. Because the DEA failed to respond to the remanded request before this litigation began, Coleman constructively exhausted his administrative remedies with respect to all issues contained in that request, including his challenge to the assessed fee and the fee waiver request subsumed within that challenge.

## IV.

Having found that Coleman has fully exhausted his administrative remedies, we now turn to the DEA's contention that judicial review is also inappropriate because Coleman failed to pay the $1,640.00 partial search fee assessed by the agency in its letter of July 14, 2009. We reject the DEA's position because FOIA does not require any prepayment of processing fees before a requester may proceed to court to dispute the assessment of those very fees. Although it is true that the $1,640 search fee was not itself in dispute, it was stated to be part of the fees ultimately payable by a *commercial* requester, which Coleman disputed and sought to challenge.

## A.

FOIA explicitly contemplates judicial review of an agency's denial of a fee waiver but makes no mention of any requirement that a requester prepay an assessed fee before proceeding to challenge that fee. *See* 5 U.S.C. § 552(a)(4)(A)(vii) ("In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo."). Were we to require Coleman to prepay even a portion of the fee that he now challenges under FOIA, we would be adding a requirement to the statutory directive governing review of adverse fee decisions. Such an addition would undermine the FOIA provision allowing de novo judicial review of an agency's denial of a fee waiver, *id.*, because the added hurdle would prevent those who cannot assemble the resources to prepay an assessed fee (including many of those for whom Congress actually intended to provide a waiver in the first place) from obtaining judicial review of an agency's erroneous fee assessment. *Pollack* rightly noted that the constructive exhaustion provision does not "relieve [a requester] of his statutory obligation to pay any and all fees which the agency was authorized to collect," 49 F.3d at 119, but determining the proper "fees which the agency was authorized to collect" is the whole point of these proceedings. Congress contemplated challenges to fee decisions, yet made no mention of a prepayment requirement. We therefore decline to frustrate FOIA's judicial review provision by imposing such a requirement.

## B.

Contrary to the DEA's position, our prior decision in *Pollack* does not compel a different outcome. In *Pollack*, this court granted summary judgment in favor of an agency in the face of a FOIA requester's categorical refusal to pay any processing fees whatsoever. 49 F.3d at 119-20. However, *Pollack* does not control the instant case because here Coleman has never refused to pay any fee under any circumstances. Rather,

he has mounted a reasoned, substantive challenge to his par-
ticular fee assessment, and he is entitled to judicial review of
that assessment.

The *Pollack* court rejected the plaintiff's contention that
"once an action is commenced in a Federal Court, a plaintiff
does not have to deposit any funds to see or obtain any of his
records that he may have requested." *Id.* at 118. At no time
did the plaintiff there contest the substance of the agency's fee
assessment or request a *bona fide* fee waiver under FOIA. *Id.*
at 120. Rather, he simply asserted that no fee could be
demanded of him after he constructively exhausted his admin-
istrative remedies and brought suit under FOIA. *Id.* at 119-20.
By contrast, Coleman has substantively contested the DEA's
fee assessment on multiple occasions and sought a fee waiver
under the applicable FOIA provisions. Coleman does not con-
tend, as did the plaintiff in *Pollack*, that no fee is owed simply
because the DEA failed to respond to his request in a timely
manner. Rather, Coleman challenges the substance of the
agency's fee assessment.[2]

---

[2]Although this court found that the *Pollack* plaintiff's position was
unfounded at the time he presented it, intervening amendments to FOIA
have since given that position a basis in the law. In 2007, after finding that
the statute "has not always lived up to [its] ideals," OPEN Government
Act of 2007 § 2, Congress added a provision establishing that an agency
forfeits its right to collect some or all of the fees otherwise payable "if the
agency fails to comply with any time limit" applicable under FOIA, *id.*
§ 6(b)(1)(A) (codified at 5 U.S.C. § 552(a)(4)(A)(viii)); *see also, e.g.*,
*Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d 31, 42 (D.D.C. 2011) (hold-
ing that an agency cannot assess FOIA processing fees if it has failed to
comply with the statutory time limit for responding to a request). This new
provision would have applied to Coleman's request given the delay he
faced, but the amendments are effective only with respect to requests ini-
tially filed on or after December 31, 2008. *See* OPEN Government Act of
2007 § 6(b)(2). Nonetheless, the new provisions "underscore Congress's
belief in the importance of the statutory time limit." *Bensman*, 806 F.
Supp. 2d at 38.

## C.

We therefore conclude that, in accord with FOIA, Coleman has exhausted his administrative remedies and properly brought suit seeking production of the records included in his initial request. *See* 5 U.S.C. § 552(a)(4)(B); 28 C.F.R. § 16.9(c). Given the DEA's utter lack of due diligence in responding to the request, as evidenced by repeated and excessive delays, the dispute over any required fee is overripe for judicial resolution. Coleman's decision to challenge rather than prepay the assessed fee poses no barrier to a decision on the merits. He is now entitled to judicial review of the DEA's fee assessment. As such, we reverse the district court's grant of summary judgment and remand the case for further proceedings.

On remand, the district court must determine what fee category—commercial or noncommercial—applies to the request at issue and whether Coleman is eligible for a waiver of any fees otherwise due—under either the public interest provision or some other provision. In order to make this determination, the district court may need to clarify the scope of the request. Once the court has reached a conclusion with respect to the fee and scope issues, it must decide whether to use its injunctive authority under FOIA to "order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *see also id.* § 552 (a)(6)(C)(i). We leave the exact sequence of resolving these matters to the sound discretion of the district court. In the exercise of that discretion, the court must be mindful that stringing this case out will defeat any remaining semblance of congressional intent.

## V.

FOIA is grounded in "the fundamental principle of public access to Government documents." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989). The statute provides a

mechanism for citizens to obtain "official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973). Here, a citizen spent over two years attempting to obtain documents from the DEA when Congress gave the agency twenty working days to respond to his request. Before filing suit, Coleman sent a request to the DEA, appealed the DEA's fee assessment to the OIP, prevailed on appeal, resubmitted the request, and waited another four months for the DEA to act following remand. There was simply no more administrative process left for him to pursue with any reasonable expectation of agency response.

We do recognize that agencies face their own challenges in implementing FOIA: the statute and its accompanying regulations are complex; the scope of the exemptions are open to interpretation and dispute; the volume of requests is frequently heavy; and citizens themselves often submit vague requests for voluminous materials. None of this, however, excuses what happened here, namely the agency's maintenance of complete and utter silence for periods vastly exceeding at every juncture the statute's requirement of a prompt response. Nowhere in FOIA did Congress contemplate government sitting on its hands for months at a time and doing nothing. The time has come for Coleman to receive resolution of his request of February 29, 2008. The district court's grant of summary judgment is therefore reversed and the case is remanded for further proceedings consistent with this opinion. On remand, the district court shall give due weight to the cumulative delays that have transpired in this case and to the importance of transparency in government.

*REVERSED AND REMANDED*